OPINION OF THE COURT
Ira Gammerman, J.
Is subdivision 1 of section 240 of the Labor Law applicable only in cases involving defective equipment? Is recovery under that section limited to a case in which an injured worker falls from a height? What liability, if any, is imposed by that statute on a subcontractor? All of these questions are raised by this matter involving a construction site accident.
*1090 This is an action to recover for personal injuries sustained by plaintiff on June 3, 1977. On that date, at 1633 Broadway, New York, New York, plaintiff was seriously injured when his left leg was caught in a hoist rope. The building at 1633 Broadway was owned by MRI Broadway Rental, Inc., and had been constructed on ground owned by defendant Mordall Realty. A portion of the building had been leased to J.C. Penny, Inc. (Penny), who had hired defendant James King & Son, Inc. (King), to renovate a number of floors. King, as the general contractor, entered into a subcontract with Carney Electric Construction Corp. (Carney) and Carneco, Inc. (Carneco), for the performance of the electrical work. The latter corporation was plaintiff’s employer. At the time of his accident, the 31-year-old plaintiff was working with a device known as a Greenlee cable-puller. Plaintiff also sued the manufacturer of the device, Ensley Tool Co., Inc. (Ensley), and its distributor Greenlee Tool Co. (Greenlee) claiming that the device was inadequate for the work, was misadvertised and failed to have appropriate warnings. Cross claims were asserted by all defendants and third-party actions were instituted against plaintiff’s employer Carneco.
Subsequent to jury selection but prior to the commencement of the trial, the court, sua sponte, and over the objection of all defendants except Mordall Realty and MRI Broadway Rental, Inc., severed the action against those defendants.
After several days of trial, the actions against King, Penny, Greenlee, Ensley and the third-party action against Carneco were settled. The action against Carney continued and the jury returned a verdict finding Carney liable under subdivision 1 of section 240 of the Labor Law. Apportioning liability among Carney, Greenlee, Ensley and Carneco, the jury found Carney 45% liable, and awarded David Novell $8,669,000, and plaintiff Linda Novell (his wife) $3,500,000. The jury also found that plaintiff David Novell was not an employee of defendant Carney in connection with an affirmative defense of workers’ compensation asserted by that defendant.
Defendant Carney has raised several arguments on its motion to set the verdict aside. It maintains that subdivi *1091 sion 1 of section 240 of the Labor Law is not applicable to this accident; that should the statute be applicable it does not impose liability on Carney, inasmuch as it is not an owner, a general contractor or an agent of either; and that the court erred in the manner in which the workers’ compensation defense was submitted to the jury. Further, Carney argues, the court also erred in not permitting the jury to consider the potential liability (for apportionment purposes) of defendants King and Penny. Finally, Carney maintains that the jury award was excessive.
FACTUAL BACKGROUND
A review of the factual background of the accident is necessary. At the time he was injured, plaintiff was working in an electrical closet located on the 23rd floor of the building. The dimensions of the closet were given variously as 7 feet by 8 feet to 10 feet by 15 feet, but an examination of the photographs of the area of the accident leads to the conclusion that the closet was approximately 6 feet by 8 feet. Plaintiff was one of two employees of Carneco charged with the job of hoisting electrical cables weighing approximately 1,000 pounds from the 11th floor through a vertical conduit or pipe to the closet on the 23rd floor. To accomplish this lift, a rope was dropped down the pipe and attached to the cables. A machine known as a cable-puller had previously been set up in the closet and it was plaintiff’s assignment to pull the rope which had been wrapped around a capstan which was turned by an electric motor which, with the turns of the rope, was to provide sufficient mechanical assistance so that plaintiff could lift the one-half-ton load. The puller was not equipped with any device or brake to prevent the rope from unwinding and slipping back down the pipe. Further, there was no hook or other device in the area behind plaintiff onto which the rope could be secured as the cable was being lifted. As a result, the rope was tied to pipes in front of plaintiff, leaving about 15 feet of slack rope in the area of plaintiff’s legs. At the time of the accident, the lift was almost completed with the end of the rope closest to the electrical cable winding around the capstan. That end of the rope and cable had been treated with lubricant which caused the rope to slip. *1092 At that point or shortly thereafter," the load suddenly began to descend and the slack rope caught plaintiff about the left leg injuring him severely.
The testimony of the manufacturer of the Greenlee cable-puller was that it was designed for horizontal pulls and not vertical lifts. That information was not, however, contained in the literature issued by the defendant manufacturer or in the catalogs of the defendant distributor. Moreover, the machine was specifically advertised as a device for vertical pulls or lifting. Proof was offered that another type of cable-puller, a Powercrat, was owned by defendant Carney but not provided to Carneco for cable lifting although specifically requested. The Powercrat puller is equipped with a brake, and utilizes a cable and a drum thereby eliminating the need for an employee to pull on the rope or to tie off slack rope. Indeed, the Powercrat was received in evidence and the jury had an opportunity to observe the manner in which it functioned.
APPLICABILITY OF SUBDIVISION 1 OF SECTION 240 OF THE LABOR LAW
Subdivision 1 of section 240 of the Labor Law provides in its first paragraph: “All contractors and owners and their agents, except owners of one and two-family dwellings who contract for but do not direct or control the work, in the erection, demolition, repairing, altering, painting, cleaning or pointing of a building or structure shall furnish or erect, or cause to be furnished or erected for the performance of such labor, scaffolding, hoists, stays, ladders, slings, hangers, blocks, pulleys, braces, irons, ropes, and other devices which shall be so constructed, placed and operated as to give proper protection to a person so employed.”
There can be little doubt that the cable-puller was a hoist within the meaning of the statute. In addition, it is not disputed that a rope was being used in the course of this work. Thus it was for the jury to determine whether or not the hoist and rope were so constructed, placed or operated as to give proper protection to plaintiff.
Defendant Carney argues that subdivision 1 of section 240 does not apply because the accident was not caused by *1093 a defect in the hoist but, rather, because it was the wrong tool for the job or that it was operated in an unsafe manner. In this argument, defendant relies on La France v Niagara Mohawk Power Corp. (89 AD2d 757). Indeed, in La France the majority held that subdivision 1 of section 240 of the Labor Law was not applicable to an accident in which the boom of a crane fell on three workingmen who were dismantling it because, as the court stated, neither the crane itself nor any of its equipment was defective. In maintaining that subdivision 1 of section 240 was inapplicable, the court noted that the pennant lines of the boom were “[not] so placed and operated to give the required protection to decedent” (p 759).
It is the view of this court that the majority holding in La France (supra) is in direct contradiction to the language of the statute and is contrary to holdings of the Court of Appeals and the Appellate Division, First and Second Departments. (See Haimes v New York Tel. Co., 46 NY2d 132; Carinha v Action Crane Corp., 58 AD2d 261 [1st Dept]; Larson v Herald, 96 AD2d 1137 [2d Dept].) The statute requires not merely that the equipment or devices be so “constructed * * * as to give proper protection” but that the equipment or devices be “placed” and “operated” to afford that same protection. Thus the failure to provide the correct tool (although it itself was not defective) or to properly operate or place it, imposes liability under subdivision 1 of section 240.
ALLEGED LIMITATION TO CASES OF FALLS FROM HEIGHTS
Defendant further argues that subdivision 1 of section 240 applies only when the injured plaintiff falls from a height as the result of a statutory violation. This argument is based on two Fourth Department cases, Van Slyke v Niagara Mohawk Power Corp. (93 AD2d 990) and DaBolt v Bethlehem Steel Corp. (92 AD2d 70). Leaving aside the rather bizarre consequences that would flow from such a holding (i.e., a plaintiff who fell from a scaffold could recover under the statute but the injured worker onto whom he fell could not), the First, Second and Third Departments do not limit recovery under subdivision 1 of section 240 to cases involving falls from heights. (Carinha v Action Crane Corp., supra [plaintiff struck by falling *1094 crane]; Tully v Roosevelt Props., 34 AD2d 786 [plaintiff injured by automobile falling off jack]; Ploof v B.I.M. Truck Serv., 53 AD2d 750 [injury caused by concrete falling on decedent because of broken cable].)
In summary, therefore, subdivision 1 of section 240 of the Labor Law is clearly applicable to the accident in which plaintiff was injured on June 3, 1977.
APPLICATION OF SUBDIVISION 1 OF SECTION 240 TO A SUBCONTRACTOR
Defendant Carney’s argument that, even if subdivision 1 of section 240 is applicable, it has no liability under the statute is likewise without merit. The statute refers to “all contractors and owners and their agents” (emphasis added). It is not disputed that King, the general contractor, delegated the electrical work in connection with the Penny renovation to Carney. Carney then arranged to have the employees necessary to perform that work supplied by Carneco, provided the equipment for the job, and some degree of supervision. Subdivision 1 of section 240 imposes liability on a subcontractor, as the agent of the general contractor, when the duty of the general contractor is delegated to that subcontractor. (Russin v Picciano & Son, 54 NY2d 311.) The delegation of the duty to provide electrical contracting services involves the delegation of authority to supervise and control that work, thus making the subcontractor the agent of the general contractor for that work. If it is in the course of that work that plaintiff is injured, defendant Carney, the subcontractor, as the agent of the contractor, may be held liable pursuant to subdivision 1 of section 240. (Larabee v Triangle Steel, 86 AD2d 289.)
CLAIM OF CONTRIBUTION FROM KING AND PENNY
Although there is no dispute that King and Penny, as general contractor and owner[1] respectively, could be held liable, there was no proof offered to establish any acts or omissions of either Penny or King which would impose *1095 liability on either defendant for the purposes of apportionment.
There was no evidence that any employees of either King or of Penny were aware that the Greenlee puller was being used or had any knowledge concerning the manner in which the cable pulling was conducted. The absolute liability created by subdivision 1 of section 240 of the Labor Law is for the benefit of an injured worker. Thus, while King and Carney, irrespective of their own culpability could be held liable to plaintiff because of a violation of subdivision 1 of section 240, that statute does not impose a duty on King and Penny running to Carney. The damages, if there is to be apportionment, are to be apportioned among Carney, King and Penny under principles of common-law negligence. Under those principles there is no basis for finding either Penny or King culpable.
The mere fact that Penny may have had a project manager or supervisor on the jobsite cannot in any way establish any negligence on its part proximately causing plaintiff’s injury. Similarly, the fact that the King construction superintendent had the authority to stop a dangerous practice by a subcontractor, without any proof that he was aware of the manner in which Carneco was pulling cable on the day of the accident is insufficient to impose liability on King. There is no duty on the part of the general contractor to actively supervise the work of the subcontractors. The mere fact that a subcontractor may have been engaged in a dangerous practice on the construction site without proof of actual notice of that dangerous practice to the general contractor does not impose common-law negligence liability on the general contractor.
workers’ compensation defense
Defendant Carney pleaded as an affirmative defense the Workers’ Compensation Law and at trial alleged that Carneco was merely the “alter ego” of Carney. If the two companies were, in fact, one, plaintiff was employed by Carney and, therefore, his action against that defendant was barred by section 29 of the Workers’ Compensation Law. There was no claim that plaintiff was a special employee of Carney (Matter of Janikowski v Yardleys of London, 11 AD2d 577) nor was it claimed that Carney and *1096 Carneco were joint venturers (Fallone v Misericordia Hosp., 23 AD2d 222, affd 17 NY2d 648). The issue presented to the court and then by the court to the jury[2] was whether or not the points of identity between the two corporations so outweighed the differences that the two corporations should be considered as one.
The proof established that the two corporations were separately organized, had separate addresses and phone numbers, had separate union agreements (indeed plaintiff, as a member of Local 3 of the IBEW could not, under his union contract, be employed by Carney which only had a contract with Local 25), filed separate tax returns (the Carney tax return referred to Carneco as its subcontractor), maintained separate records and had different workers’ compensation carriers. Carney was owned by one member of the Carney family. Carneco was owned by that same person and his two sons. Although the Carney family, father, two sons and mother are officers of both corporations, they occupied different corporate offices in each one.
The Carney family elected to operate their business through separate corporate entities. By so doing, they were able to bid on and perform work in various parts of the metropolitan area utilizing members of both local unions of the IBEW, Local 3 and Local 25. The jury concluded not to disregard the separate corporate entities and not to allow Carney to shield itself from liability to plaintiff. This holding was well supported by the facts and is in accord with decisional law. (Buchner v Palms Hotel, 87 AD2d 691; Daisernia v Co-Operative G. L. F. Holding Corp., 26 AD2d 594.)
DAMAGES
On the issue of damages, defendant’s argument has merit. With respect to the special damages awarded to plaintiff David Novell, the jury’s awards for future loss of earnings and future medical expenses are not supported by the proof. Those amounts are excessive by at least *1097 $400,000. Similarly, the award to David Novell of $7,000,000 for pain and suffering is excessive. Although appellate decisions do not provide as much guidance in this area as perhaps they could (aside from indicating that excessive awards should be reduced) the Appellate Division, First Department, has recently concluded that an award of $1,000,000 for pain and suffering alone to a 16 year old rendered paraplegic as a result of his injuries was not excessive. (Poulos v City of New York, 99 AD2d 709.) Using this decision as an indication of what the appellate courts believe is appropriate, the damage award to David Novell should be reduced to $1,900,000. The damages awarded to plaintiff Linda Novell are also excessive and require reduction. The motion to set the verdict aside is, therefore, granted and a new trial directed, on the issue of damages only, unless plaintiff David Novell stipulates to reduce the award to him to $1,900,000 and plaintiff Linda Novell stipulates to reduce the award to her to $300,000.

. Penny, although a tenant, was the leasee who hired the general contractor and was in over-all charge of the work and thus for the purposes of subdivision 1 of section 240 was an owner (Buonassisi v Sears, Roebuck & Co., 43 AD2d 701; Katz v Press Mgt. Corp., 117 Misc 2d 870.)

. The court concluded to submit the issues raised by the workers’ compensation defense to the jury, although there were no factual disputes between the parties, because of the holding of the Appellate Division, First Department, in Brooks v Chemical Leaman Tank Lines (71 AD2d 405), and language contained in the concurring and dissenting opinions in Shine v Duncan Petroleum Transp. (60 NY2d 22).