Robert RENN and Mary
Renn, Plaintiffs,

v.

AIRLINE OF FINLAND d/b/a
Finnair, Defendant.

FINNAIR OY, Third Party Plaintiff,

v.

UNITED AIRLINES, INC., Third
Party Defendant.

No. 87 Civ. 6241 (JMW).

United States District Court,
S.D. New York.

Jan. 10, 1989.

---

Carl Lustig, III, Arye, Kors & Lustig, P.C., New York City, for plaintiffs.

Carole Burns, Newman Schlau Fitch & Burns, P.C., New York City, for defendant.

Edward C. DeVivo, Windels, Marx, Davies & Ives, New York City, for third-party defendant.

## MEMORANDUM AND ORDER

WALKER, District Judge:

Plaintiffs Robert and Mary Renn originally filed suit against defendant Airline of Finland ("Finnair") seeking $2.25 million in damages, plus costs and interest, for injuries allegedly sustained by Robert Renn as a result of falling from a ladder during the course of his employment. Plaintiffs contend that Renn's injuries were caused by defendant. Defendant then filed a cross claim against third party defendant United Airlines, Inc. ("United") to recover whatever might be paid in a judgment favorable to plaintiffs. United removed the action from state court to this Court. Jurisdiction is based on diversity of citizenship pursuant to 28 U.S.C. § 1332; defendant is a foreign corporation licensed and authorized to do business in New York. Currently before this Court are plaintiff's and defendant's cross motions for summary judgment pursuant to Fed.Rule Civ.P. 56. After reviewing the papers before it and the relevant law, the Court grants defendant's motion for summary judgment.

## BACKGROUND

Each side has moved for summary judgment. The Federal Rules authorize summary judgment where "there is no genuine issue as to any material fact ..." Fed.R. Civ.P. 56(c). A genuine dispute exists if "a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Although the burden is on the moving party to show that no relevant facts are in dispute, the nonmoving party may not rely simply "on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment." *Knight v. U.S. Fire Insurance Co.*, 804 F.2d 9, 12 (2d Cir.1986), *cert. denied*, 480 U.S. 932, 107 S.Ct. 1570, 94 L.Ed.2d 762 (1987). Further, if the evidence supporting the non-moving party's claims is meager, the moving party may simply point "out to the district court that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). Thus, this Court must "assess whether there are any factual issues to be tried, while resolving ambiguities and drawing reasonable inferences against the moving party." *Knight*, 804 F.2d at 11.

Because the Court will grant defendant's motion, it accepts as true plaintiffs' description of the events at issue. However, the essential facts are not in dispute. Finnair leases office space from United at the United Airlines Terminal at John F. Kennedy International Airport ("JFK"). Plaintiff Robert Renn is employed by United as a Building Maintenance Electrician. United

provides maintenance services to its tenants, including Finnair. The lease agreement between Finnair and United contains the following clause:

> [L]essee [Finnair] shall make no changes, alterations, additions or improvements, or do any work in connection therewith in, on or about the premises without the prior written consent of the lessor.

Lease ¶ 3. The contract between Finnair and United also states that the lessor is responsible for making all structural repairs to the premises and performing all maintenance work. ¶ 7; *See* Exhibit L to Def. Motion for Summary Judgment.

Sometime on or before January 10, 1986, United instructed Renn to perform certain electrical work that had been requested by Finnair in connection with the installation of a new computer. On the morning of January 10, Renn arrived at the Finnair office before it was open for business. He removed a ladder from Finnair's office. While on a stairwell landing, which shares a common wall with Finnair's office, plaintiff fell from that ladder and sustained certain injuries. The stairwell landing, where plaintiff fell, is in a common area not leased by Finnair. United completed an accident report, dated January 10, 1988. For the purposes of defendant's motion, the Court further assumes that Renn had defendant's implied permission to use its ladder, and that the ladder was defective. *See* Aff. of Carl Lustig, III at ¶ 11.

Reading the papers submitted to the Court by the parties, it becomes clear that this dispute is not over the essential facts but rather over how the relevant legal authorities should be interpreted. *See, e.g.,*

Lustig Aff. at ¶ 10 ("[Defendant's motion must be denied because its papers] betray a fundamental misapprehension of the Labor Law, under which this case is brought.") Plaintiffs seek to impose liability on defendant pursuant to Section 240(1) of the Labor Law of New York ("§ 240(1)").[1] The parties agree that § 240(1) controls their motions for summary judgment. *See, e.g.,* Lustig Aff. at ¶ 10. The Court now turns to that provision.

## DISCUSSION

As a federal court sitting in diversity, this Court must, of course, construe the New York Labor Law in a manner consistent with New York State court interpretations of the statute. Section 240(1) states:

> All contractors and owners and their agents, except owners of one and two-family dwellings, who contract for but do not direct or control the work, in the erection, demolition, repairing, altering, painting, clearing or painting of a building or structure shall furnish or erect, or cause to be furnished or erected for the performance of such labor, scaffolding, hoists, stays, ladders, slings, hangars, blocks, pulleys, braces, irons, ropes, and other devices which shall be so constructed, placed and operated as to give proper protection to a person so employed.

In an attempt to insure a safe workplace, this section has consistently been interpreted liberally by New York courts, and imposes absolute liability. *See, e.g., Pereira v. A.D. Herman Construction Co.,* 74 A.D.2d 531, 425 N.Y.S.2d 308 (1st Dep't 1980). Defendant argues that, as a lessee,

---

1. Plaintiffs' Complaint and Bill of Particulars leave some doubt as to the precise nature of their action. In their Complaint, plaintiffs assert generally violations of "the Labor Law of the State of New York and the applicable and pertinent municipal codes, rules, regulations and ordinances of the City of New York including, but not limited to, the Administrative Code of the City of New York." ¶ 19. In their Bill of Particulars, the plaintiffs assert that they "will claim that defendant violated the following statutes: Labor Law Section 240; Labor Law Section 241(6); Labor Law Section 200; Chapter 1 of the Board of Standards and Appeals Section 23-1.5 and 23-1.21; Administrative Code of the

City of New York Section 70.0." ¶ 9. Those provisions impose a general duty on owners and contractors and represent a codification of their common law duty. *See, e.g., Russin v. Louis N. Picciano & Son,* 54 N.Y.2d 311, 317, 445 N.Y. S.2d 127, 129, 429 N.E.2d 805, 807; *DeTommaso v. M.J. Fitzgerald Construction Corp.,* 138 A.D.2d 341, 525 N.Y.S.2d 632, 634 (2d Dep't 1988). In their papers, the parties focus exclusively on § 240(1). Plaintiffs raise no other basis for opposing defendant's motion. The Court's analysis of that section does provide a sufficient basis for a disposition of the current summary judgment motions.

it does not fall within the reach of the section, which applies only to "all contractors and owners and their agents." Plaintiffs argue that the broad language of the section, together with the remedial purpose of the statute, supports their motion for summary judgment. The Court disagrees with plaintiffs.

The language of Section 240(1) must be interpreted "in light of the historical development of these provisions." *Russin v. Louis Picciano & Son*, 54 N.Y.2d 311, 445 N.Y.S.2d 127, 429 N.E.2d 805 (1981). The legislative history of § 240(1) supports the Court's decision. In 1969 the legislature amended the statute to include the phrase "all owners, contractors and their agents" in an effort to expand liability:

> This bill places ultimate responsibility for safety practices at building construction jobs where such responsibility actually belongs, on the owner and general contractor.... The owner and general contractor have the prime contract and interest in completing the work. They choose the subcontractors and coordinate the work and, in addition, have overall supervision of all work.... Under the present Sections 240 and 241 of the Labor Law the non-delegable duty has shifted from the general contractor to the subcontractor, making him responsible for many things that he has no control of, such as *coordination and overall supervision of the work.*

N.Y.Legis.Ann. 1969 at 407, 408 (emphasis added).

The state legislature thus sought to impose absolute liability pursuant to this statute on those parties who have an opportunity to supervise or control conditions at the workplace. The amendment further sought to insure that owners would not escape from liability even if their lessees arranged for and supervised the work at issue. By its action, the legislature imposed liability on *both* an actively involved lessee and a more passive owner. *See, e.g., Haimes v. New York Telephone Co.*, 46 N.Y.2d 132, 136, 412 N.Y.S.2d 863, 865, 385 N.E.2d 601, 603 (1978); *Ramos v. Marksue Realty Corp.*, 586 F.Supp. 488, 490 (S.D.N.Y.1984). Although the legislature adopted

§ 240(1) to protect workers, a court cannot justify imposing liability on those lessees not in a position to insure worker safety.

That is not to say that a lessee may *never* be considered an "owner" pursuant to the terms of § 240(1). In *Katz v. Press Management Corp.*, 117 Misc.2d 870, 459 N.Y.S.2d 383 (Sup.Ct., Broome Co., 1983) the court interpreted § 240(1) by looking to the definition of "owner" in Article 11, Title 6 of the Labor Laws, which addresses the "Duties of Owners and Occupiers." In § 315 of Title 6, "owner" is defined as "the owner of the premises, or the lessee of the whole thereof, or the agent in charge of the property." *See id.* at 386 (placing liability on owner in fee even when the property is rented by another). The term "has not been limited to the titleholder ... [but] has been held to encompass a person who has an interest in the property and who has fulfilled the role of owner by contracting to have the work performed for his benefit." *Bach v. Emery Air Freight Corp.*, 128 A.D.2d 490, 512 N.Y.S.2d 417, 418 (2d Dep't 1987) (citations omitted). More specifically, he is the "party who, as a practical matter, has the right to hire or fire subcontractors and to insist that proper safety practices are followed." *Id.* (citations omitted).

When deciding whether to impose the absolute liability of § 240(1) upon a lessee, courts consider the extent of the control exercised by the lessee over matters pertaining to the workplace. The court in *Novell v. Carney Elec. Const., Corp.*, 123 Misc.2d 1089, 476 N.Y.S.2d 241 (Sup.Ct.New York Co.1984) apportioned liability between the subcontractor, general contractor and a lessee who hired the workers and was responsible for supervising the job. The court noted that the lessee, "although a tenant, was the [one] who hired the general contractor and was in overall charge of the work and thus for the purposes of Section 240(1) was an owner." *Id.* 476 N.Y.S.2d at 246, n. 1 (citations omitted). In order to impose absolute liability upon the lessee, the lessee must, "in a practical sense ... [have] fulfilled the role of owner." *Buonassisi v. Sears Roebuck & Co.*, 43 A.D.2d 701, 350 N.Y.S.2d 5, 7 (2d Dep't

1973). *See also DeFreece v. Penny Bag Inc.*, 137 A.D.2d 744, 524 N.Y.S.2d 825, 826 (2d Dep't 1988) (interpreting a comparable Labor Law provision, court deemed a contract vendee an "owner," but not before it determined that he "had a property interest, already had access to the premises, and was the party who had contracted to have the roof repair work performed.")

The Court rejects plaintiffs' contention that defendant's lease with United provides Finnair with a sufficient nexus to the workplace to justify the imposition of a non-delegable duty pursuant to § 240(1). As noted above, the lease explicitly provides not only that the "lessee shall make no changes, alterations, additions or improvements, or do any work in connection therewith in, on or about the premises, ..." but it also states that the lessor is responsible for making all structural repairs to the premises and performing all maintenance work. ¶¶ 3 and 7; *See* Exhibit L to Def. Motion for Summary Judgment. These provisions are consistent with the practice of United to staff a maintenance department for the tenants in its JFK terminal. Finnair is not the owner of the premises in any "practical sense." *See Buonassisi, supra.* Indeed, plaintiffs admit that "there is no question whatsoever that ultimate responsibility remains to be determined and will, in all probability, substantially if not completely exonerate the defendant [Finnair]." Lustig Aff. ¶ 13.

As defendant notes, plaintiff has provided no support for the notion that a lessee who neither contracted with the contractor or subcontractor to do the work, nor directed or supervised the work can be termed an "owner" under Section 240(1). Plaintiffs nowhere even assert that defendant actually contracted for, directed, or supervised Renn's work. *See Russin, supra* (Court of Appeals failed to impose § 240(1) liability on a prime contractor who did not obtain the authority to supervise and control the workplace activity at issue).[2] The cases relied upon by plaintiffs place a non-delegable duty of care either on an owner, which Finnair is not, or on a lessee who hired and supervised the work on its premises, which Finnair did not. *See, e.g., Kerr v. Rochester Gas & Electric Corp.*, 113 A.D.2d 412, 496 N.Y.S.2d 880 (4th Dep't 1985); *Katz v. Press Management Corp.*, 117 Misc.2d 870, 459 N.Y.S.2d 383 (Sup.Ct. Broome Co.1983); *Celestine v. City of New York*, 86 A.D.2d 592, 446 N.Y.S.2d 131 (2d Dept.1982), *aff'd*, 59 N.Y.2d 938, 466 N.Y.S. 2d 319, 453 N.E.2d 548 (1983).[3]

The Court's decision on these motions in no way addresses United's liability, if any. United filed a brief urging a denial of plaintiffs' motion. In it, United did not deny that its status and the responsibilities it has assumed would bring it within the meaning of "all contractors and owners and their agents," as defined in § 240(1) and as interpreted by the courts. However, no motion against United is outstanding.

**2.** Plaintiffs' emphasis on Finnair's need for the computers and the undisputed fact that Finnair ordered the computers is off the mark. *See* Lustig Aff. at ¶ 6. To order office equipment is not the equivalent of being given supervisory responsibility over maintenance work.

**3.** The Court rejects plaintiffs' strained efforts to classify Finnair as a contractor. *See, e.g,* Final Mem. of Law of Plaintiffs at 6. Their argument renders meaningless the distinction between a general or sub-contractor and a mere lessee who lacks authority or responsibility over work that may be performed on the leased premises. United provides maintenance services to its tenants. Perhaps United could be seen as a general contractor had it contracted out for Renn's services. The fact that a lessee requests the lessor to perform services specifically provided for in their contract does *not* transform the lessee into

a general contractor. Similarly, the Court finds no merit in what appears to be an attempt to classify Finnair as an owner and United as *its* agent or contractor. *See, e.g.,* Final Mem. of Law of Plaintiffs at 3–4; Plaintiffs' Further Mem. of Law at 8. That argument turns the undisputed facts of this case on their head. Finnair did not delegate any authority to United. Rather, as a material term of its lease agreement, Finnair agreed to refrain from making any structural alterations to the premises and left maintenance responsibilities in United's hands. Moreover, plaintiffs read § 240(1) selectively. That section speaks of "contractors and owners *and their* agents" (emphasis added). To argue that United was Finnair's agent, plaintiffs first must convince this Court that Finnair is an "owner" for purposes of § 240(1). As explained above, this is a burden plaintiffs cannot meet.

## CONCLUSION

For the reasons set forth above, defendant's motion for summary judgment is granted. Plaintiffs' motion is thus moot.

SO ORDERED.