■ IRENE T. PLOOF, as Administratrix of the Estate of ERNEST L. PLOOF, Deceased, Respondent, v B. I. M. TRUCK SERVICE, INC., Appellant, and LANE CONSTRUCTION CORPORATION, Defendant and Third-Party Plaintiff-Appellant. ZAPPALA CO., INC., Third-Party Defendant-Respondent.—Appeals from a judgment of the Supreme Court, entered June 6, 1975 in Albany County, upon a verdict rendered at a Trial Term in favor of Irene T. Ploof, as administratrix of the estate of Ernest L. Ploof, against both defendants, B. I. M. Truck Service, Inc., and Lane Construction Corporation, and from a judgment of the same court, entered June 11, 1975, in favor of Zappala Co., Inc., dismissing Lane's third-party complaint. On June 18, 1970 Ernest L. Ploof, a truck driver employed by the Zappala Co., Inc., was fatally injured when he was unloading a shipment of concrete pallets at a Lane Construction Corporation site. A trolley cable on the Side-O-Matic unloading device snapped as he was trolleying a load to an elevated spot at the bridge site and the load slid down pinning him beneath it. Following a jury trial a verdict was rendered against Lane and B. I. M. for $350,000 wrongful death and $25,000 pain and suffering, apportioning the liability 80% against B. I. M. and 20% against Lane. On the third-party action by Lane against Zappala the jury returned a verdict of no cause of action. The instant appeals ensued. With respect to the liability of B. I. M. Truck Service, Inc., the evidence is sufficient to permit the jury to have found that B. I. M. was liable on the theory of implied warranty of fitness and strict liability as enunciated in *Velez v Craine & Clark Lbr. Corp.* (33 NY2d 117) and *Codling v Paglia* (32 NY2d 330). The case was pleaded, tried and correctly charged under the above theory. From the evidence the jury could find that the trolley cable was sold by B. I. M. to Zappala. The proof was that this accident was caused by the breaking of the trolley cable and that the failure of the cable was caused by its being too large for the pulley system in which it operated. This defect was further aggravated by the reverse bends in the system which weakened the capacity of the cable to the degree that it was overloaded when it was placed under the greatly increased pressure caused by the attempt to trolley these very heavy cement blocks up an elevated boom. On the evidence the jury was justified in finding that B. I. M. breached its implied warranty of fitness for its intended purpose in regard to the sale of the cable because it was too large for its pulley system. The questions as to Lane's liability under section 200 of the Labor Law and section 240 of the Labor Law were submitted to the jury by specific questions contained in the interrogatories. Section 200 of the Labor Law reads: "1. All places to which this chapter applies shall be so constructed, equipped, arranged, operated and conducted as to provide reasonable and adequate protection to the lives, health and safety of all persons employed therein or lawfully frequenting such places. All machinery, equipment, and devices in such places shall be so placed, operated, guarded, and lighted as to provide reasonable and adequate protection to all such persons. The board may make rules to carry into effect the provisions of this section." As to this section, the evidence revealed that Lane's foreman selected and constructed an elevated unloading site about three fourths of the way up the slope to the bridge to facilitate his slope paving and then directed decedent to unload the pallets on this elevated platform. During the attempted unloading Lane's foreman was in fact on the truck with the

decedent. Unloading at this elevated spot made it impossible to trolley the pallets while the boom was parallel to the ground as was the usual procedure. The additional stress on the cable caused by the necessity to trolley the load up an elevated boom (which dramatically increased the load) was claimed to be one of the proximate causes of the cable failure. The jury answered "yes" to the second question in the interrogatories "Did Lane Construction breach section 200 of the Labor Law as charged by the court." We hold that under the evidence in this case the jury could properly so find. Section 240 of the Labor Law reads as follows: "1. All contractors and owners and their agents, in the erection, demolition, repairing, altering, painting, cleaning or pointing of a building or structure shall furnish or erect, or cause to be furnished or erected for the performance of such labor, scaffolding, hoists, stays, ladders, slings, hangers, blocks, pulleys, braces, irons, ropes, and other devices which shall be so constructed, placed and operated as to give proper protection to a person so employed." The intent of this statute is to seek extra protection for workmen working on any structure who use dangerous equipment, as defined in the statute, such as scaffolds, hoists, ladders, pulleys and ropes. There is testimony in the record that the unloading at the point here involved was part of the construction and erection of the bridge (see *Matter of Rocha v State of New York*, 45 AD2d 633, mot for lv to app den 36 NY2d 642; *Tully v Roosevelt Props.*, 34 AD2d 786), and it was claimed that section 240 was applicable and Lane became absolutely liable when the cable broke due to the defective pulley and cable system. In our view the jury could properly find on the evidence in this case, as they did, that Lane breached section 240. All other contentions we find without merit and, accordingly, the judgments appealed from should be affirmed. Judgments affirmed, with costs. Koreman, P. J., Kane, Mahoney, Larkin and Reynolds, JJ., concur.