OPINION OF THE COURT
Fuchsberg, J.
This action for wrongful death is grounded on an alleged violation of section 240 of the Labor Law of the State of New York. The basic question we are called upon to decide is whether a breach of the duties prescribed by that statute gives rise to absolute liability on the part of an owner of a building despite the fact that the owner exercised no supervision, control or direction of the work being performed and that the person injured by the violation was a self-employed independent contractor whom the owner had engaged to do the work.
Subdivision 1 of section 240 reads as follows: "All contractors and owners and their agents, in the erection, demolition, repairing, altering, painting, cleaning or pointing of a building or structure shall furnish or erect, or cause to be furnished or erected for the performance of such labor, scaffolding, hoists, stays, ladders, slings, hangers, blocks, pulleys, braces, irons, ropes and other devices which shall be so constructed, placed and operated as to give proper protection to a person so employed” (emphasis supplied).[1]
Essentially, the facts are undisputed. Plaintiff’s decedent, Edward Haimes, was painting a cornice at the roof level of a building owned by the defendant, New York Telephone Company, when the ladder on which he was standing toppled, throwing him 18 feet to the ground and causing him to lose his life. The work was being done for a fixed price pursuant to defendant’s purchase order. The exact time of performance and the other details of the work were left entirely to Haimes, who also supplied all equipment, including the ladder used on the job. At the time of the occurrence, no person was assisting the decedent and the ladder was not being secured against slippage by any mechanical or other means whatsoever.[2]
*135 The appeal comes to us in the following procedural context:
After a nonjury trial on the issue of liability alone, Trial Term, though its findings of fact accorded with those we have recited, dismissed the complaint, which was premised only on the alleged violation of section 240. The court did so solely because the plaintiff had failed to establish "control or supervision”, which the Trial Judge then thought the statute required as an essential predicate for imposition of liability on the owner.* *[3] But the Appellate Division, noting that "no issue of fact having been considered” by it, reversed "on the law and the facts”, ordered judgment entered in favor of the plaintiff and remitted the matter for assessment of damages. It thereafter granted defendant leave to appeal to this court and, pursuant to CPLR 5713, certified the following question: "Did the Trial Term err as a matter of law in dismissing plaintiff’s complaint?” For the reasons that follow, in answering the question in the affirmative, we also conclude that the complaint should not have been dismissed.
Viewed in perspective, section 240 is one of the progeny of our State’s long line of legislative efforts to eliminate dangers to the health and safety of those working in hazardous occupations. As long ago as 1885, enactments to that end had already come to include the first "scaffold laws”, which expressly placed house painters within the embrace of their protections (L 1885, ch 314; L 1892, ch 517). During the ensuing decades, with the growth of social consciousness, the statutory provisions became increasingly favorable to workers, but as is not unusual in such matters there came a time when the pendulum began to swing the other way.
The retreat reached its most pronounced form with the passage of the 1962 amendments. Prior thereto, an owner or general contractor had come to be regarded as subject to vicarious first instance liability without regard to fault or control. The amendments, however, especially section 240’s *136 companion section 241, came to be construed as requiring that an owner or general contractor actually had to have exercised control or supervision before either could be held responsible for the negligent acts of others (see Allen v Cloutier Constr. Corp., 44 NY2d 290, 292-293, supra). However, the full effects of this turnabout had hardly come to be felt when the Legislature, in 1969, once again reversed its course and returned to what were essentially the pre-1962 provisions (see L 1919, ch 545, § 2; L 1962, ch 450, § 3; L 1969, ch 1108, § 3).
In calling a halt to its earlier backtracking, the Legislature minced no words. Referring expressly to both section 240 and section 241, its stated purpose in redrafting these statutes was to fix "ultimate responsibility for safety practices * * * where such responsibility actually belongs, on the owner and general contractor” (NY Legis Ann, 1969, p 407). Whatever doubt may have remained that it had succeeded in doing so as to section 241 was laid to rest by our recent decision in Allen v Cloutier Constr. Corp. (supra).
There is no less reason to apply the expressed legislative policy in our construction of section 240. Prior to 1969, this section placed liability for its violation upon "A person employing or directing another to perform labor” (emphasis ours); it now unqualifiedly places liability upon "All contractors and owners and their agents”, duplicating the language of section 241. Under both amended sections, an owner no longer need be the employer of the worker or one directing his labor in order to be subject to liability. Furthermore, section 240 no longer contains any provision spelling out responsibility of subcontractors for compliance with the duties that section imposes; as Judge Cooke, writing in Allen, pointed out, the 1969 deletion of such a clause from section 241 was a significant factor in the revitalizing of that statute (Allen v Cloutier Constr. Corp., supra, p 298). If, with all that, an owner’s liability had been intended to continue to be conditioned on control and supervision, it would have to be said that the Legislature, for all its vaunted labors and professions, had engaged in but an empty charade. There is no basis for such conclusion (Carinha v Action Crane Corp., 58 AD2d 261, 267 [Murphy, P.J., concurring in part], 275 [Lupiano, J., dissenting]; Rocha v State of New York, 45 AD2d 633; Matter of Weinstein v . Swan-Finch Oil Corp., 7 Misc 2d 291).
Having thus disposed of the underlying issue, we turn to the owner’s alternative position, i.e., that, since Haimes was an independent contractor rather than an "employee” of one, he *137 did not fall within the class of persons protected by section 240. It argues that neither the legislative history nor the decided cases deal discretely or expressly with that question and that, therefore, the question is an open one. We hardly think so. The Legislature in its memorandum spoke to an owner’s "non-delegable duty to provide a safe place to work for all workmen on the job” (emphasis ours) and to the common prediliction of "an owner and/or contractor * * * to choose a subcontractor predicated on price” rather than safety. As already indicated, the legislators also implemented their words by eliminating section 240’s earlier bracketing of subcontractors with those upon whose shoulders the statutory duties theretofore had been placed. Thus, given the history and purpose behind the 1969 amendment, the failure to litigate the point would appear to prove nothing more than that those affected accepted the fact that a workman who is an independent contractor is yet a workman.
Little more, if anything, can be inferred from the fact that the statute, in referring to safety devices, states that these are intended for "protection to a person so employed”. This is far from saying that such a person must be part of an employer-employee relationship. It needs no resort to the dictionary to know that the meaning of the word "employed” is not so limited. In the statute itself, "employed” refers back to the phrase "performance of such labor”. And, revealingly, the Labor Law’s own definition of "employed” is "permitted or suffered to work” (Labor Law, § 2, subd 7).
Finally, the defendant claims it could not have been the legislative design that "every property owner who had people working on his premises in the capacity of an independent contractor, whether applying siding, painting, repairing a television antenna or a roof, or doing similar work, would be an insurer of the independent contractor’s safety”. In so arguing, it ignores the fact that the Legislature apparently decided, as it was within its province to do, that over-all compliance with safety standards would be achieved by placing primary and inescapable responsibility on owners and general contractors rather than on their subcontractors who, often occupying an inferior economic position, may more readily shortcut on safety unless those with superior interests compel them to protect themselves.
That is not to say, and it would be unrealistic for us to assume, that the Legislature was not aware of the fact that in *138 many instances the circumstances may be just the opposite. The owner of a one-family dwelling, for example, may be in a less dominant position than the particular subcontractor he engages. Or, perhaps neither the owner nor the contractor, most especially when the hiring is for a limited or casual task, is more to be looked to as a guardian of safety than is the other. But, whether these or other situations warrant exceptional treatment was, as with the basic legislation itself, a matter for the exercise of the Legislature’s judgment, not ours. Precedent for exceptions in comparable circumstances, should the Legislature believe it wise to make any, is not hard to find (see, for instance, Labor Law, § 202).
Accordingly, the question certified must be answered in the affirmative and the order of the Appellate Division must be affirmed.
Chief Judge Breitel and Judges Jasen, Gabrielli, Jones and Wachtler concur with Judge Fuchsberg; Judge Cooke taking no part.
Order affirmed, with costs. Question certified answered in the affirmative.
APPENDIX A
"§ 240. Scaffolding and other devices for use of employees.
"1. All contractors and owners and their agents, in the erection, demolition, repairing, altering, painting, cleaning or pointing of a building or structure shall furnish or erect, or cause to be furnished or erected for the performance of such labor, scaffolding, hoists, stays, ladders, slings, hangers, blocks, pulleys, braces, irons, ropes and other devices which shall be so constructed, placed and operated as to give proper protection to a person so employed.
"2. Scaffolding or staging more than twenty feet from the ground or floor, swung or suspended from an overhead support or erected with stationary supports, except scaffolding wholly within the interior of a building and covering the entire floor space of any room therein, shall have a safety rail of suitable material properly attached, bolted, braced or otherwise secured, rising at least thirty-four inches above the floor or main portions of such scaffolding or staging and extending along the entire length of the outside and the ends thereof, with only such openings as may be necessary for the delivery of materials. Such scaffolding or staging shall be so fastened as to prevent it from swaying from the building or structure.
"3. All scaffolding shall be so constructed as to bear four times the maximum weight required to be dependent therefrom, or placed thereon when in use.”

. The full text of section 240 is set out as Appendix A to this opinion.

. Aside from the violation of the statute itself, the unsecured use of the ladder did not conform with the rules of the Board of Standard and Appeals, which, inter alia, specifically provide: "When work is being performed from rungs higher than 10 feet above the ladder footing, mechanical means for securing the upper end of such ladder against side slip are required and the lower end of such ladder shall be held in place *135 by a person unless such lower end is tied to a secure anchorage or safety feet are used.” (12 NYCRR 23-1.21 [b] [4] [iv]). Thus, if the facts had not been broad enough to implicate the statute per se, the violation of the rules, as has long been recognized, would still constitute evidence of negligence (Allen v Cloutier Constr. Corp., 44 NY2d 290, 299; Teller v Prospect Hgts. Hosp., 280 NY 456, 460; Prosser, Torts [4th ed], § 36, pp 197-198).

. The Trial Judge interpreted our decision in Iuliani v Great Neck Sewer Dist. (38 NY2d 885) as requiring the dismissal. However, Iuliani arose before 1969, when the Legislature last recast sections 240 and 241 of the Labor Law (see Kappel v Fisher Bros., 6th Ave. Corp., 39 NY2d 1039).