Andres RAMOS and Lisa McAdams, Plaintiffs,

v.

MARKSUE REALTY CORPORATION, Miltrose Realty Corporation, and David Kuperberg, Defendants.

No. 83 Civ. 3498 (LBS).

United States District Court, S.D. New York.

April 26, 1984.

Addabbo, Greenberg, D'Errico & Caputo, Garden City, for plaintiffs; Frank N. D'Errico, Garden City, N.Y., of counsel.

Howard S. Davis, New York City, for defendants; A. Neil Tolciss, Brooklyn, N.Y., of counsel.

## OPINION

SAND, District Judge.

This is a personal injury action based upon diversity jurisdiction under 28 U.S.C. § 1332. Plaintiffs are domiciliaries of the State of New Jersey and defendants Marksue Realty Corporation ("Marksue") and Miltrose Realty Corporation ("Miltrose") are domestic corporations organized under the laws of the State of New York. Defendant David Kuperberg is a domiciliary of the State of New York as well.

It is undisputed that on October 1, 1983, plaintiff Ramos, while washing windows in the stairway of a five story apartment building in Manhattan, slipped and fell off the third floor ledge. Plaintiff now seeks damages for the injuries he suffered. He has sued Marksue and Miltrose as corporate owners of the building in question and Kuperberg in his capacity as both co-owner and manager of that building.

In his first count, Ramos alleges that defendants have violated Section 240 of the Labor Law of the State of New York and seeks $1,500,000 damages plus costs for the injuries he claims to have suffered because of the alleged violation. In his sec-ond count, Ramos seeks $1,500,000 as a result of the alleged negligence, carelessness and recklessness of defendant, resulting in the accident. As a third count, plaintiff Lisa McAdams sues for $500,000 damages plus costs for the loss of services, companionship, and consortium of her husband Ramos, allegedly caused by the conduct of the defendants. Defendants have moved for partial summary judgment dismissing plaintiff's first cause of action. For the reasons that follow, we deny this motion.

## DISCUSSION

The parties disagree as to which section of the New York Labor Law is controlling. Plaintiffs urge that Section 240, entitled "Scaffolding and other devices for use of employees" is the applicable statute. Defendants, on the other hand, contend that Section 202, entitled, "Protection of the public and of persons engaged at window cleaning and cleaning of interior surfaces of buildings" is controlling.

As a federal court sitting in diversity, we must, of course, construe the New York Labor Law in a manner consonant with New York State court interpretations of the statute. Section 240 of the Labor Law, aimed at protecting workmen engaged in dangerous employment, has consistently received a liberal construction by the New York courts. These liberal interpretations, coupled with recent state legislative amendments to Section 240 designed to broaden the scope of the statute, lead us to conclude that plaintiff Ramos is protected by Section 240.

Section 240 provides, in pertinent part:

§ 240. Scaffolding and other devices for use of employees.

1. All contractors and owners and their agents, except owners of one and two-family dwellings who contract for but do not direct or control the work, in the erection, demolition, repairing, altering, painting, cleaning or pointing of a building or structure shall furnish or erect, or cause to be furnished or erected

for the performance of such labor, scaffolding, hoists, stays, ladders, slings, hangers, blocks, pulleys, braces, irons, ropes, and other devices which shall be so constructed, placed and operated as to give proper protection to a person so employed ....

N.Y.Lab.Law § 240 (McKinney 1965 & Supp.1984). Other subdivisions of Section 240 give requirements for ladders, scaffolds and other devices provided for employees' use.

New York courts have long imposed absolute liability for violations of Section 240. *See, e.g., Pereira v. A.D. Herman Construction Co.,* 74 A.D.2d 531, 425 N.Y.S.2d 308 (1st Dept.1980); *Long v. Murnane Associates,* 68 A.D.2d 166, 416 N.Y.S.2d 413 (3d Dept.1979); *Tully v. Roosevelt Properties, Inc.,* 34 A.D.2d 786, 787, 311 N.Y.S.2d 41, 43 (2d Dept.1970).

First, we note that "cleaning ... of a building or structure" is encompassed by the plain terms of the statute. Although the type of periodic window cleaning in which plaintiff Ramos was engaged is not an activity specifically enumerated in Section 240, this does not prevent its inclusion by implication. In point is *Katz v. Press Management Corp.,* 117 Misc.2d 870, 459 N.Y.S.2d 383 (Sup.Ct.1983), where the Court determined in a question of first impression, that a wallpaper hanger, injured when his ladder collapsed, was a member of the class protected under Section 240.

The Court so held, despite the fact that wallpaper hanging is nowhere mentioned in Section 240. The Court remarked that the Legislature, instead of intending to protect solely those employed in the particular types of work enumerated in the statute, sought to protect those engaged in a general class of work involving the use of scaffolds and ladders. *Katz,* 117 Misc.2d at 872, 459 N.Y.S.2d at 385.

Also supporting this proposition is *Ploof v. B.I.M. Trucking Service, Inc.,* 53 A.D.2d 750, 384 N.Y.S.2d 521 (3d Dept.1976), where a contractor was held absolutely liable under Section 240 for the death of a truck driver which occurred when a trolley cable snapped as he was trolleying a load to a bridge construction site. In its opinion, the appellate court stated,

... the intent of [section 240] is to seek extra protection for workmen working on any structure who use dangerous equipment, as defined in the statute, such as scaffolds, hoists, ladders, pulleys and ropes.

53 A.D.2d at 751, 384 N.Y.S.2d at 523. *See also Struble v. John Arborio, Inc.,* 74 A.D.2d 55, 57, 426 N.Y.S.2d 592, 593 (3d Dept.1980) (plaintiff injured in a fall from a catwalk at a site some distance from construction area is entitled to the protection of Section 240 since his activities were necessitated by, and thus incidental to, the construction).[1]

The legislative history of the current version of Section 240 also supports a liberal interpretation of the provision. Prior to 1969, Section 240 placed liability for its violation upon "A person *employing* or *directing* another to perform labor" (emphasis supplied). In 1969, however, the Legislature amended that Section to place liability upon "All contractors and owners and their agents," with a narrow exception not relevant here. Thus, under Section 240 as amended, the owner of a building can be subject to liability even though he neither employs nor directs the activities of the injured party. *Haimes v. New York Telephone Co.,* 46 N.Y.2d 132, 136, 412 N.Y.

---

1. Cases interpreting this Section's absolute liability provisions provide additional support for a liberal interpretation of the provision. *See Haimes v. New York Telephone Co.,* 46 N.Y.2d 132, 412 N.Y.S.2d 863, 385 N.E.2d 601 (1978) (error to dismiss complaint based on violation of Section despite fact that self-employed independent contractor had provided and set up the ladder from which he fell to his death); *Long v. Murane Associates, supra* (affirming summary judgment in favor of the plaintiff under Section 240 where it was undisputed that scaffold from which plaintiff's decedent had fallen had been knowingly constructed by decedent in a defective manner); *Pereira v. A.D. Herman Construction Co., supra* (imposing absolute liability where injured plaintiff was the sole witness to accident caused by the defective scaffold he built).

S.2d 863, 865, 385 N.E.2d 601, 604 (1978). In so amending Section 240, the Legislature emphasized the broad scope and purpose of the amended statute. *See* N.Y. Legis.Ann., 1969, p. 407.

■ In light of these positions taken by the New York courts and Legislature, the fundamental issue in this case appears to be not whether window cleaning is specifically mentioned in Section 240, but instead whether Ramos belonged to that class of workmen employed to use any of the dangerous equipment catalogued in Section 240, *i.e.*, scaffolds, hoists, ladders, etc. We find Ramos, who at the time of his accident was employed in an activity which, by definition, involves the use of the dangerous equipment enumerated above, to be a member of the class the statute was intended to protect.

Despite the plain language of Section 240, its broad remedial purpose, and the courts' liberal interpretations of the Section, defendants contend that this Section should not be applied to the window cleaning involved here because of the existence of Section 202 of the Labor Law, entitled "Protection of the public and of persons engaged at window cleaning and cleaning of exterior surfaces of buildings." This Section provides, in pertinent part:

§ 202. Protection of the public and of persons engaged at window cleaning and cleaning of exterior surfaces of buildings.

The owner, lessee, agent and manager of every public building and every contractor involved shall provide such safe means for the cleaning of the windows and of exterior surfaces of such building as may be required and approved by the board of standards and appeals. The owner, lessee, agent, manager or superintendent of any such public building and every contractor involved shall not require, permit, suffer or allow any win-

dow or exterior surface of such building to be cleaned unless such means are provided to enable such work to be done in a safe manner for the prevention of accidents and for the protection of the public and of persons engaged in such work in conformity with the requirements of this chapter and the rules of the board of standards and appeals. A person engaged at cleaning windows or exterior surfaces of a public building shall use the safety devices provided for his protection. Every employer and contractor involved shall comply with this section and the rules of the board and shall require his employee, while engaged in cleaning any window or exterior surface of a public building, to use the equipment and safety devices required by this chapter and rules of the board of standards · and appeals.

The provisions of this section shall not apply to (1) multiple dwellings six stories or less in height located anywhere in this state; nor to (2) any building three stories or less in height in cities, towns or villages having a population of less than forty thousand; nor to (3) the windows or exterior surfaces of any building which may be exempted under any rule adopted by the board of standards and appeals . . . .

N.Y.Lab.Law § 202 (McKinney 1965 & Supp.1984).

Defendants argue that the existence of Section 202, which specifically applies to "window cleaning," precludes plaintiff Ramos from relying on Section 240. We reject this contention.

First, defendants are expressly exempted from liability under Section 202, by virtue of their building being "a multiple dwelling six stories or less in height." To · accept defendant's proposition would thus bar plaintiff from any recovery under the New York Labor Law,[2] a result hardly conso-

---

**2.** We note in passing that the New York courts have construed an apartment building, such as the one in the present case, to be à "public building" for the purposes of Section 202. *Connors v. Boorstein*, 4 N.Y.2d 172, 175, 173 N.Y.

S.2d 288, 290, 149 N.E.2d 721, 723 (1958); *Pollard v. Trivia Bldg. Corp.*, 291 N.Y. 19, 50 N.E.2d 287 (1943). We also note Section 2 subd. 13 of the Labor Law, which provides:

§ 2 Definitions

nant with the remedial intent of the Legislature or the liberal construction of Section 240 by the state courts.

Second, in 1948 the New York Court of Appeals, in reversing a judgment for the defendant and ordering a new trial, applied Section 240 to an action where a window cleaner engaged to clean windows in a school auditorium was injured in a fall from a ladder. *See Koenig v. Patrick Construction Corp.*, 298 N.Y. 313, 83 N.E.2d 133, (1948). Defendants, however, contend that the later case of *Connors v. Boorstein*, 4 N.Y.2d 172, 173 N.Y.S.2d 288, 149 N.E.2d 721 (1958), compels a finding that plaintiff Ramos' activities fall outside the scope of Section 240. In *Connors*, the Court of Appeals explained:

> It follows, as a matter of logic and common sense, that the word "cleaning" as used in context, [in § 240], has reference to the cleaning incidental to building construction, demolition and repair work and not to the cleaning of the windows of a private dwelling by a domestic ....

4 N.Y.S.2d at 175; 173 N.Y.S.2d at 290.

Defendants thus cite *Connors* for the proposition that window cleaning, not incidental to building construction, demolition or repair work, is not an activity protected by Section 240. But we believe that the *Connors* holding has been tempered by the more recent holding of the Court of Appeals in *Rivers v. Sauter*, 26 N.Y.2d 260, 263, 309 N.Y.S.2d 897, 899, 258 N.E.2d 191, 194 (1970).

In holding that plaintiff was covered by Section 240, the Court modified the *Connors* holding that cleaning under the Section need be incidental to building construction, demolition or repair work. Rather, the Court stated that the *Connors* exception to the scope of Section 240 "should apply only to truly domestic situations" and that "[t]he painting of the outside of a house by a painter is surely not that." *Rivers*, 26 N.Y.2d at 263, 309 N.Y.S.2d at 899, 258 N.E.2d at 194. Under *Rivers*, the cleaning of apartment building windows by an employee engaged exclusively for that purpose would not be a "truly domestic situation," and thus, the plaintiff here should not be barred from recovery under Section 240.[3]

For the foregoing reasons, finding Section 240 applicable to this case, we deny defendants' motion for partial summary judgment. The parties are directed to attend a pretrial conference on May 10, 1984 at 9:30 A.M. in Courtroom 307.

SO ORDERED.

---

Whenever used in this chapter:
... 13. "Public building" shall include ... an apartment building ... or any other building more than one story in height except a dwelling house less than three stories high or occupied by less than three families.
N.Y.Lab.Law § 2 (McKinney 1965 & Supp. 1984).

**3.** Defendants also argue that under *Beavers v. Hanafin*, 88 A.D.2d 683, 450 N.Y.S.2d 905 (3d Dept.1982), plaintiff is excluded from coverage under Section 240. In *Beavers*, the Appellate Division held that a workman, injured while cleaning gutters at defendant's home, was not entitled to recovery under the Section. Citing *Connors* as authority, the court based its holding on the proposition that Section 240 applies only to cleaning incidental to building construction, demolition or repair work, and that the cleaning of gutters did not come within this proposition. In light of the recent Court of Appeals and other state decisions and the legislative amendments to Section 240 noted previously which have given increasingly liberal interpretations to that statute, we do not believe New York courts would follow the restrictive holding of *Beavers*. Although not mentioned by the court in *Beavers*, we note that defendant therein, the owner of a one-family dwelling who apparently did not direct or control the work of the plaintiff, would have been excluded from that statute as amended in 1980. This may provide alternate support for the holding in that case, inapplicable here.