■ JOSE POUSO et al., Respondents, v CITY OF NEW YORK, Respondent, and PAUL KENT et al., Appellants. (And a Third-Party Action.)—In an action to recover damages for personal injuries, etc., the defendants Paul Kent and Thomas Weitzner, individually and doing business as Kent Weitzner Associates, and the defendant Supermarkets General Corporation separately appeal from so much of an order of the Supreme Court, Kings County (Hutcherson, J.), dated September 6, 1989, as denied their respective motions for summary judgment dismissing the complaint insofar as it is asserted against them and any cross claims and counterclaims asserted against them, and Supermarkets General Corporation further appeals from so much of the order as granted the plaintiffs' cross motion for leave to serve a supplemental bill of particulars.

Ordered that the order is modified, on the law, by deleting

the provision thereof which denied the motion of the defendant Supermarkets General Corporation for summary judgment dismissing the complaint insofar as it is asserted against it and any cross claims and counterclaims against it and substituting therefor a provision granting the motion of that defendant and severing the action against the remaining defendants; as so modified, the order is affirmed insofar as appealed from, without costs or disbursements.

The plaintiff Jose Pouso was injured during a construction project when the sidewalk where he was jackhammering caved in, causing him to fall into an underground vault. He commenced this action against the City of New York, the party who planned, contracted for and initiated the construction, Paul Kent and Thomas Weitzner, individually and d/b/a Kent Weitzner Associates, the owners of the vault and premises in front of which the accident occurred, and Supermarkets General Corporation (hereinafter SGC), the tenant of the premises.

After completion of all discovery, SGC and the owners separately moved for summary judgment, contending that, since they neither controlled, supervised, authorized nor had any connection whatsoever with the work being performed, they could not be held liable under the Labor Law. The plaintiffs opposed the motion for summary judgment brought by the owners, submitted an affirmation stating that they did not oppose the motion of SGC, and cross-moved for leave to serve a supplemental bill of particulars. The cross motion was made after the note of issue had been filed. The trial court denied the motions for summary judgment but granted the plaintiffs' cross motion. We now modify and grant SGC's motion for summary judgment.

SGC was neither a contractor, owner, nor agent engaged in the erection, demolition, excavation, repair, alteration, cleaning, painting or pointing of a building or structure. Nor did it have the authority to control the activity which brought about the injury (see, Russin v Picciano & Son, 54 NY2d 311). Accordingly, neither Labor Law §§ 240 or 241 nor the regulations of the New York City Board of Standards and Appeals is applicable here.

Additionally, article 45 of the lease between SGC and the owners specifically excluded the subject vault from the leased premises. Although SGC used the subject vault for storage, it was not a tenant with respect to the vault and had no duty to maintain it. In the absence of a duty, SGC's conduct cannot be

said to have been the proximate cause of the plaintiff Jose Pouso's injuries.

Summary judgment was properly denied, however, to the owners of the premises. The Court of Appeals has expressly held that the duties imposed by Labor Law §§ 240 and 241 (6) are applicable to owners "irrespective" of their authority to control or supervise the work being performed (see, *Haimes v New York Tel. Co.*, 46 NY2d 132; *Allen v Cloutier Constr. Corp.*, 44 NY2d 290). Moreover, the owners of the vault had a duty to maintain it in good repair and to correct any structural defect which might have existed and caused injuries to those lawfully on the property. Under the facts and circumstances of this case, whether the owners were negligent remains a question for the trier of fact.

We further note that the Supreme Court properly exercised its discretion in permitting the plaintiffs to serve a supplemental bill of particulars to correct a typographical error in their original bill of particulars, since there was no surprise or prejudice to any of the defendants. Mangano, P. J., Kunzeman and Harwood, JJ., concur.

Balletta, J., concurs in part and dissents in part and votes to modify the order appealed from, on the law, by deleting the provisions thereof which denied the appellants' motions for summary judgment and substituting therefor provisions granting those motions, with the following memorandum in which Eiber, J., concurs: The majority would establish ownership of property alone as the predicate for liability under the Labor Law. However, in my view, neither case law nor a review of legislative intent can support such a proposition.

When is an owner of real property not an owner subject to liability under Labor Law § 240 (1) and § 241 (6)? When, as here, there is absolutely no connection, whether direct or indirect, between the owner of the property and the work being performed. The further extension of case law to provide for liability under the circumstances herein is not warranted. Accordingly, I would also grant summary judgment dismissing the complaint to the owners, the defendants Paul Kent and Thomas Weitzner, individually and d/b/a Kent Weitzner Associates.

In the case at bar, the plaintiff Jose Pouso was injured while working on a City reconstruction project. Specifically, it appears that the City and the injured plaintiff's employer Petracca & Sons, Inc., entered into a contract for the reconstruction of the Fulton Street Mall. The project entailed

replacing sewers, water mains, curbs and sidewalks and, where necessary, reconstructing certain vaults beneath the sidewalk on Fulton Street. At the time of the incident, the injured plaintiff was in the process of breaking up the sidewalk in front of the building owned by Paul Kent and Thomas Weitzner d/b/a Kent Weitzner Associates, when, for some reason, the ground below him gave way and he fell into an underlying vault, thereby sustaining severe injuries. As previously noted, this was a public works contract undertaken solely by the City. There was no contractual relationship between the property owner or his tenant with the City or the plaintiff's employer. The plaintiffs commenced the instant action, *inter alia*, against the owners, relying upon Labor Law § 240 (1), § 241 (6) and § 200. In my view, that reliance is totally misplaced under the circumstances herein.

Labor Law § 240 (1) provides, in part, that "[a]ll contractors and owners and their agents * * * in the erection, demolition, repairing, altering, painting, cleaning or pointing of a building or structure shall furnish or erect, or cause to be furnished or erected * * * scaffolding, [etc.] * * * [so] as to give proper protection to a person so employed". In addition, Labor Law § 241 (6) essentially provides that "All contractors and owners and their agents" shall "provide reasonable and adequate protection and safety" to workers and visitors in "[a]ll areas in which construction, excavation or demolition work is being performed".

It is well established that Labor Law § 240 (1) and § 241 (6) impose a nondelegable duty upon owners and general contractors to implement the safety provisions set forth therein *(see, Haimes v New York Tel. Co.,* 46 NY2d 132; *Allen v Cloutier Constr. Corp.,* 44 NY2d 290). However, a review of the cases which have interpreted the term "owner" indicate that Paul Kent and Thomas Weitzner, d/b/a Kent Weitzner Associates, were not owners within the contemplation of the statutes.

In the case of *Copertino v Ward* (100 AD2d 565), the defendant landowner hired a sewer company to repair the sewer line running from the street to his house. The plaintiff was working on the portion of the pipe that was underneath the street when the trench caved in and he was injured. This court held that the defendant was the "owner" of the worksite within the meaning of the Labor Law, even though the worksite at that point was in the street. The court explained that the "[d]efendant, as an easement holder, had a property interest in the excavation site where plaintiff was injured. Furthermore, *defendant contracted with the plaintiff's em-*

*ployer,* A-1 Sewer Company, to remove the obstruction causing the stoppage of sewer flow in his feeder line. *He had the primary interest in completing the work* since his property alone would receive the benefit. As a practical matter, the defendant had the right to insist that proper safety practices were followed and it is the right to control the work that is significant, not the actual exercise or nonexercise of control" *(Copertino v Ward, supra,* at 567 [emphasis added]). The court also noted that the term "owner" had been held to *"encompass a person who has an interest in the property and who fulfilled the role of owner by contracting to have work performed for his benefit" (Copertino v Ward, supra,* at 566 [emphasis added]).

Similarly, in *DeFreece v Penny Bag* (137 AD2d 744, 745) this court determined that a contract vendee was an "owner" within the meaning of Labor Law § 241 (6) since, "[a]s a contract vendee, he had a property interest, already had access to the premises, and was the party who had contracted to have the roof repair work performed" *(Bach v Emery Air Frgt. Corp.,* 128 AD2d 490; *Nagel v Metzger,* 103 AD2d 1, 7; *Sweeting v Board of Coop. Educ. Servs.,* 83 AD2d 103, 113-114).

In *Sweeting v Board of Coop. Educ. Servs. (supra,* at 114) the court stated that "the 'owners' contemplated by the Legislature are those parties with a property interest who hire the general contractor to undertake the construction work on their behalf". Indeed, the memorandum accompanying the 1969 amendments to Labor Law §§ 240 and 241 indicated: "The Labor Law was enacted for the sole purpose of protecting [workers]. The courts have consistently held that the owner and general contractor have a non-delegable duty to provide a safe place to work for all [workers] on the job. *The owner and general contractor have the prime contract and interest in completing the work.* They choose the subcontractors and coordinate the work and, in addition, have overall supervision of all the work. *They are primarily responsible for the erection of the building"* (1969 NY Legis Ann, at 407 [emphasis added]).

It seems fairly clear from the legislative history, therefore, that the changes to the Labor Law in 1969 were intended to prevent a property owner from shielding itself from liability by relying upon the work of independent contractors and subcontractors. Thus, in *Haimes v New York Tel. Co. (supra,* at 137) the Court of Appeals explained "that the Legislature apparently decided * * * that over-all compliance with safety standards would be achieved by placing primary and inescap-

able responsibility on owners and general contractors rather than on their subcontractors who, often occupying an inferior economic position, may more readily shortcut on safety unless those with superior interests compel them to protect themselves". Similarly, in *Allen v Cloutier Constr. Corp. (supra,* at 301) the court noted that "the statute now serves the salutary purpose of inducing owners and contractors to assure that only financially responsible and safety-conscious subcontractors are engaged so that a high standard of care might be maintained throughout the entire construction site". The statute was not intended to reach the property owner, as in this case, who had absolutely no connection, direct or indirect, with the work being performed.

In the instant case, the owners did not contract for the work that was being done. Nor did any agent of the owners contract for the work. They had no right to control the work, nor did they have the power to impose any conditions upon the construction which was going on. They were not primarily responsible for the contract, and it cannot be said that they had a primary interest in completing the work or that their property alone would receive the benefit of the City's reconstruction project. In short, there is no nexus between them and the injured worker upon which liability under Labor Law §§ 240 and 241 can be premised *(see, Cantarino v New York Zoological Socy.,* 162 AD2d 155; *see also, Fox v Jenny Eng'g Corp.,* 122 AD2d 532, *affd* 70 NY2d 761; *Manning v St. John's Smithtown Hosp.,* 141 Misc 2d 739).

Such a conclusion is entirely consistent with the legislative history and the purpose of the statutes in question. Again, in *Allen v Cloutier Constr. Corp. (supra,* at 298) the Court of Appeals, referring to the pre-1962 version of Labor Law § 241, which was essentially the same as the present version, stated, "[t]his nondelegable duty was made designedly broad to reach those who were thought to have the over-all responsibility for the construction of a building in which the Legislature deemed a particular employment inherently hazardous, irrespective of fault and despite lack of control". Here, the owners had no responsibility for the work—the Fulton Street reconstruction was a City public works contract.

Moreover, the cases relied upon by the plaintiffs—*Sperber v Penn Cent. Corp.* (150 AD2d 356), *Kerr v Rochester Gas & Elec. Corp.* (113 AD2d 412) and *Celestine v City of New York* (86 AD2d 592, *affd* 59 NY2d 938)—are distinguishable from the instant case and do not support a finding of liability in this case. A review of the record in *Sperber* reveals that the

plaintiff was injured while working pursuant to a construction contract entered into by the lessee of the property. Similarly, in *Kerr,* the construction project upon which the plaintiff was injured had been undertaken by the lessee. The courts in both *Sperber* and *Kerr* found the owner-lessors of the property strictly liable, noting that "it is within the control of the fee owner, when he conveys a leasehold or other partial interest in the property, to select responsible grantees and to impose conditions in the conveyance concerning construction upon the premises" *(Sperber v Penn Cent. Corp., supra,* at 358; *see, Kerr v Rochester Gas & Elec. Corp., supra,* at 416). A similar rationale underlies the decision in *Celestine* wherein the court held that the Long Island Railroad, the owner of the property, was liable, although the work was being performed on behalf of the City of New York and the New York City Transit Authority which had been granted easements by the Long Island Railroad. In addition, the record in *Celestine* reveals that the Long Island Railroad retained substantial control over the construction being performed.

Unlike the situation in *Sperber* or *Kerr,* the lessee of the property herein did not contract to have the work performed. Thus, the rationale that strict liability will insure that a landowner will select a responsible tenant has no application in this case. Similarly, the owners did not grant an easement to the City to undertake the reconstruction. Thus, *Celestine* is inapplicable to the instant facts. Indeed, the plaintiff Jose Pouso was injured while working on a public sidewalk. He was not performing any work as such on the owner's property. In short, as I stated above, there is absolutely no nexus between the work and the owners which would justify imposing liability in this case.

Nor is there any basis for holding the owners liable under Labor Law § 200, which codified the common-law rule that an owner has a duty to provide a safe place to work *(see, Rusin v Jackson Hgts. Shopping Center,* 27 NY2d 103). There is no evidence in the record that the owners exercised any supervision or control over the work performed or that they even had notice, actual or constructive, of the allegedly unsafe condition causing the accident *(see, Santamaria v RRI Realty Corp.,* 149 AD2d 680; *Whitaker v Norman,* 146 AD2d 938, *affd* 75 NY2d 779; *Mancini v Cappiello Realty Corp.,* 144 AD2d 154; *DeTommaso v Fitzgerald Constr. Corp.,* 138 AD2d 341).