OPINION OF THE COURT
Irad S. Ingraham, J.
Plaintiff commenced this action seeking damages arising from a work-related injury and now seeks partial summary judgment as to liability against the defendant property owner, pursuant to Labor Law § 240.
Defendant has commenced a third-party action against plaintiff’s employer, and now cross-moves for summary judgment against plaintiff or, in the alternative, awarding indemnification from the third-party defendant. Defendant further seeks to amend the answer to include affirmative defenses of waiver and indemnification against plaintiff based upon a "hold harmless” agreement, and an affirmative defense/counterclaim alleging intentional misrepresentation by plaintiff within said agreement.
The third-party defendant opposes both plaintiff’s motion for judgment and the defendant/third-party plaintiff’s cross motion for indemnification.
Following oral argument defendant/third-party plaintiff’s request for leave to amend the answer was approved, pursuant to CPLR 3025. The issues of liability and indemnification were reserved, for written decision. The issues raised within the amended answer are considered herein.
FINDINGS OF FACT
Plaintiff was employed by third-party defendant Frederick Palmer, doing business as Palmer Lightning Protection Company. Mr. Palmer is the sole proprietor of the business. Palmer had prepared a bid proposal for repair of the bell tower and spire of the First Presbyterian Church in Marathon in January 1991, in response to an inquiry by Peter Zubal, representing the defendant Church. Palmer conducted all negotiations and discussions with Church representatives regarding this proposal.
A scaffold was constructed by plaintiff, Palmer, and co-workers on the site prior to commencing work, in April of 1991. Spikes were used to secure the scaffolding to the bell tower. There were no guardrails provided. No tests measuring weight bearing ability were conducted; it does not appear that the *572 scaffolding was regularly inspected for any defects. On July 27, 1991 plaintiff suffered serious personal injury when the scaffold collapsed from a height of approximately 27 feet. Both plaintiff and third-party defendant Frederick Palmer were standing upon the scaffold at the time. Neither plaintiff nor Palmer clearly saw or recollects what caused the scaffold to fall. On the date of the accident Palmer’s son was present upon the work site, and he saw plaintiff and his father falling. Palmer was subsequently charged with OSHA violations regarding the construction of the scaffold, and fines were imposed and paid.
Plaintiff, Palmer and another co-worker had signed a contract dated June 6, 1991 containing a "hold harmless” agreement prior to the date of the accident. The relevant clauses read as follows:
"Liability: The contractor agrees that he undertakes all repairs and renovations as detailed in the proposal at his own risk and he agrees to indemnify and save the church and all its members and officers harmless from and against any claims for damage to property or injury to, or the death of any person, including employees, of any actions arising out of the acts of the contractor and at his own cost and expense, defend any action brought against either the contractor and/or the church; and promptly pay any adverse judgment in any such action, and hold the church and its members and officers harmless from and against any loss or damage and expense claimed by the church and its members and officers by reason of such claim * * *
"Only an individual signing this contract as a contractor shall be permitted on the property of the church for the purpose of accomplishing repairs and renovations to the spire and bell tower.
"All individuals signing this agreement as contractor agree that they are jointly and severally liable for any injuries to property or to any other person not a contractor under the terms of this contract.”
The typed notation "contractor” appears beneath each signature line. At the time he signed the contract, plaintiff was aware that Palmer had no liability insurance. He was aware that the purpose of the document was to prevent suit against the Church. This agreement was prepared by members of the defendant Church. Peter Zubal signed on behalf of the Church and requested that Palmer and his workers sign it.
*573 As a member of the Church building committee, Zubal was the "coordinator of the project”. He would periodically visit the site. He observed the scaffolding being constructed and used, and walked upon it on at least one occasion. He did not inspect it or offer suggestions regarding the method of construction. The defendant Church did not provide tools or materials for the project. Communications between plaintiff and Zubal were limited to greetings on the occasions of Zubal’s site visits.
CONCLUSIONS OF LAW
Labor Law § 240 imposes absolute liability upon owners and contractors for a failure to furnish and erect scaffolding and other such equipment in a manner providing proper protection to workers involved in building construction projects. This duty is nondelegable. Comparative negligence does not constitute a defense to this statutory liability. The statute has been strictly interpreted so as to effect the policy it promotes. (Rocovich v Consolidated Edison Co., 78 NY2d 509; Zimmer v Chemung County Performing Arts, 65 NY2d 513; Bland v Manocherian, 66 NY2d 452.)
Plaintiff has established that a statutory violation proximately caused his injuries. It is uncontroverted that the scaffolding collapsed. (Place v Grand Union Co., 184 AD2d 817; Drew v Correct Mfg. Corp., 149 AD2d 893, 894; compare, Carlos v Rochester Gen. Hosp., 163 AD2d 894.)
Has plaintiff effectively waived the statutory protection by signing the "hold harmless” agreement? The Appellate Division, Third Department, has recognized that a contractor may waive the statutory provisions by written agreement in certain circumstances. (Horning v Gore, 87 AD2d 34.) The legislative purpose behind the enactment of Labor Law § 240 was "to fix 'ultimate responsibility for safety practices * * * where such responsibility actually belongs, on the owner and general contractor’ ”. (Haimes v New York Tel. Co., 46 NY2d 132, 136, citing 1969 NY Legis Ann, at 407; Rocovich v Consolidated Edison Co., supra, at 513.) In enacting this statute, "the Legislature apparently decided * * * that over-all compliance with safety standards would be achieved by placing primary and inescapable responsibility on owners and general contractors rather than on their subcontractors who, often occupying an inferior economic position, may more readily shortcut on safety unless those with superior interests compel them to *574 protect themselves”. (Haimes v New York Tel. Co., supra, at 137.)
The Horning case (supra) is readily distinguished from the instant matter. Specifically, that case involved construction work performed upon a single-family dwelling immediately prior to the legislative amendment exempting owners of such dwellings from the statutory provisions. This amendment was referenced within the decision as an indication of the differing public policy attending such circumstances. (Homing v Gore, supra, at 37.) Further, the sole indication that plaintiff was a "contractor” rather than a "worker” fully entitled to statutory protection is the designation within the agreement itself. This agreement was prepared by defendant, yet there is no evidence that defendant was unaware of plaintiff’s role and responsibilities upon the project. Simply put, no other shred of evidence has been proffered from which one might infer that plaintiff was a "contractor” as that term is generally understood or as it is used within the governing statute. (See, Carollo v Tishman Constr. & Research Co., 109 Misc 2d 506, 508.)
Given the strong public policy involved herein, as stated, and upon the facts and circumstances of this matter, extension of the rule enunciated within the Horning case (supra) is inappropriate. Judicial recognition of this contract as an effective waiver would eviscerate the statute, rendering its protection a mere sham.
Similar considerations do not apply as to third-party defendant Palmer, however. The contract is legally enforceable as between defendant and third-party defendant Palmer relative to indemnification. Further, there is scant evidence of supervision and control by defendant, and this party is thus entitled to indemnification upon common-law grounds as well. Any liability of the defendant is merely vicarious. (Clute v Ellis Hosp., 184 AD2d 942; Rapp v Zandri Constr. Corp., 165 AD2d 639; Young v Casabonne Bros., 145 AD2d 244; Horning v Gore, supra, at 36.)
Accordingly, this matter is determined as follows: plaintiff’s motion for partial summary judgment against defendant is granted, and defendant is adjudged liable to plaintiff.
*575 Defendant/third-party plaintiff’s cross motion for indemnification by the third-party defendant is granted.
The parties are directed to proceed to determination of damages.
No motion costs are awarded.