[32 NYS3d 147]

Modesto Costa, Appellant, v State of New York, Respondent.

First Department, May 26, 2016

APPEARANCES OF COUNSEL

*Queller, Fisher, Washor, Fuchs & Kool, LLP*, New York City (*Christopher L. Sallay, Julie T. Mark* and *Dallin M. Fuchs* of counsel), for appellant.

*Eric T. Schneiderman, Attorney General*, New York City (*Matthew W. Grieco* and *Anisha S. Dasgupta* of counsel), for respondent.

## OPINION OF THE COURT

SAXE, J.

This appeal raises the issue of whether New York State, despite its status as the owner of Pier 40 in Hudson River Park, can avoid an owner's absolute liability under the Labor Law by reliance on the legislature's turnover of the stewardship—but technically not ownership—of the property to a public benefit corporation.

On March 22, 2013, claimant Modesto Costa, a construction worker hired by Padilla Construction Services to perform the stair renovation on a stair renovation project inside a building located at Pier 40, was injured when a metal beam collapsed and struck him. As a result of the accident, claimant alleges, he suffered significant permanent injuries.

Pier 40 is located within the Hudson River Park, which extends along the western edge of Manhattan from the top of Battery Park to 59th Street. At the time of the accident, title ownership of Pier 40 was held by defendant State of New York, although all day-to-day operations of the entire Park, including Pier 40, were under the authority and management of the Hudson River Park Trust (the Trust), a public benefit corporation created by the legislature in 1998 (*see* McKinney's Uncons

Laws of NY §§ 1641-1656 [Hudson River Park Act, L 1998, ch 592]).

Claimant initially filed a notice of claim against New York City. However, on April 3, 2014, the City moved for summary judgment on the ground that it did not own Pier 40, but that the site was actually owned by the State of New York. Attached to this motion was the affidavit of a title examiner who stated that the record title for Pier 40 was held by New York State; also appended was a notice of appropriation of the property by the State of New York. The City's motion was granted.

On April 24, 2014, claimant made the underlying motion for leave to file late notice of claim against the State of New York, pursuant to the Court of Claims Act § 10 (6). The Court of Claims denied claimant's motion, on the ground that New York State was not a proper party to the action, because the legislature had transferred all of the State's legal obligations regarding the Hudson River Park to the Trust. Claimant appeals, arguing that New York State remains liable under the Labor Law because it remains the record title owner of Pier 40. He contends that the Hudson River Park Act of 1998 did not carve out an exception to the absolute liability imposed on owners under the Labor Law.

Discussion

Labor Law §§ 240 (1) and 241 (6) impose a nondelegable duty on contractors and owners (*see Gordon v Eastern Ry. Supply*, 82 NY2d 555 [1993]). The Labor Law's imposition of absolute liability on owners includes all "owners in fee even though the property might be leased to another" (*Coleman v City of New York*, 91 NY2d 821, 823 [1997] [internal quotation marks omitted]), and "even though the job was performed by an independent contractor over which it exercised no supervision or control" (*Rocovich v Consolidated Edison Co.*, 78 NY2d 509, 513 [1991], citing *Haimes v New York Tel. Co.*, 46 NY2d 132, 136-137 [1978]).

The Hudson River Park Act, by its explicit terms, does *not* alter ownership and title to the property (*see* Uncons Laws § 1647 [3] [a]). Rather, it directs the State and City, as owners of portions of the Park, to "enter into agreements with the trust, whether by lease or otherwise, for a term not to exceed 99 years" and "execute such other instruments as necessary, whereby the trust shall receive a possessory interest in the real property and exercise its rights, powers, responsibilities, and duties" (Uncons Laws § 1647 [3] [b]).

It is well settled that the act of leasing its property to another entity does not in itself allow the owner of the property to avoid absolute liability under the Labor Law. In *Coleman v City of New York* (91 NY2d at 822), the Court declined to relieve the City of New York of the responsibilities of ownership under the Labor Law where it had leased the site of the accident to the Transit Authority, and a Transit Authority employee was injured while performing repair work. The Court rejected the City's argument that it should not be strictly liable because it lacked any ability to protect Transit Authority workers, holding that the broad reach of owner liability under Labor Law § 240 (1) could not be eliminated without an exception carved out by the legislature (*see* 91 NY2d at 823).

Similarly, in *Adimey v Erie County Indus. Dev. Agency* (89 NY2d 836 [1996], *modfg for reasons stated in dissenting op* 226 AD2d 1053 [4th Dept 1996]), title to the construction site was held by the defendant Erie County Industrial Development Agency, which had purchased the property from the plaintiff's employer, Tonawanda Coke Corporation, pursuant to a sale and lease-back transaction. The defendant agency, argued that it had retained title to the property only for tax benefits, and that upon expiration of the lease, title was to be reconveyed to Tonawanda Coke Corporation for nominal consideration. Although the majority at the Appellate Division, Fourth Department, had held that "a sale and lease-back transaction between the fee owner and [the local industrial development agency] was not a 'genuine allocation of ownership' for purposes of Labor Law § 240 (1)" (226 AD2d at 1053), the Court of Appeals held otherwise, agreeing with the dissenters at the Appellate Division that the absolute liability of a title owner under Labor Law § 240 (1) must be imposed on the defendant agency as title owner, in the absence of an exception crafted by the legislature (89 NY2d at 838).

As the foregoing cases illustrate, the mere act of leasing the property to another entity does not alone allow the owner to avoid the broad reach of owner liability under Labor Law § 240 (1) (*Coleman*, 91 NY2d at 823).

The State argues that a lessee with total control over its property may be an "owner" for purposes of the Labor Law, citing this Court's statement that "[t]he 'owners' who are contemplated by the Legislature under Labor Law § 240 (1) are those parties with a property interest who hire the general contractor" (*Frierson v Concourse Plaza Assoc.*, 189 AD2d 609,

611 [1st Dept 1993]). However, the possibility that a lessee may be chargeable as an owner may not necessarily be equated with the lessee replacing the title owner for purposes of Labor Law liability. In fact, *Frierson* did *not* consider a claim that the lessee would step into the owner's shoes, leaving the title owner without liability; rather, there, this Court granted summary judgment on the issue of liability against the owner and general contractor, while denying summary judgment as against the lessee, allowing for the possibility that at trial the lessee might also be found to be strictly liable under the Labor Law. Moreover, the subsequent *Coleman* case establishes that a lessee's total control is not in itself grounds to excuse the owner from liability.

We therefore reject the State's argument that the lease to the Trust is enough to clear the State of liability under the Labor Law as the owner of the property. We perceive no reason why the rule stated in *Coleman* should be inapplicable simply because the lease is prompted by the legislature rather than by the owner. Rather, as the Court explained in *Coleman*, the State, as owner, may only avoid liability if the legislature created an exception to that liability (*see also Sanatass v Consolidated Inv. Co., Inc.*, 10 NY3d 333, 340 [2008]).

The only concrete example of such a "carved out" exception to an owner's strict liability under the Labor Law is provided by *Coleman*, which points to the legislature's amendment of Labor Law §§ 240 and 241 (6), adding language to those provisions that explicitly create an exception to owner liability for "owners of one- and two-family dwellings" who contract for but do not direct or control the work (*see* 91 NY2d at 823, citing L 1980, ch 670). Claimant suggests that an explicit amendment to the Labor Law is therefore required for an exception to be made to absolute liability, and that in the absence of such an amendment to the Labor Law, no exception to the States's absolute liability as owner of Pier 40 exists. However, we reject the premise that an amendment to the Labor Law is the only way for the legislature to create an exception to owners' liability under the Labor Law.

Rather, we conclude that other legislative enactments may establish a legislative intent to exempt the State from owners' liability under the Labor Law. To determine whether the legislature intended such an exemption with the Hudson River Park Act requires a careful consideration of the Act's terms and provisions. We conclude that the legislature intended the

Act to exempt the title owner from any liability that would otherwise flow from its ownership of Hudson River Park property that was turned over to the Trust.

Section 5 of the Hudson River Park Act (Uncons Laws § 1645 [1]), gives the Trust total "authority over the planning, design, construction, operation and maintenance of" the park; the Act also gives the Trust the right to receive rents and other revenues generated from the park (*see* §§ 1646 [g]; 1647 [10]), although ownership and title would remain with the State (*see* § 1647 [2], [3]). Also, notably, the Act directs that the Trust has the capacity to sue and be sued (§ 1647 [1] [d] [v]), and requires that all tort actions commenced against the Trust comply with the notice of claim requirement of General Municipal Law § 50-e (§ 1651). Most importantly, the Act expressly states that "[u]pon the coming into existence of the trust, the trust shall succeed to *all* contracts, leases, licenses and *other legal obligations* respecting the park to which its predecessors are party at or after the effective date of this act" (§ 1645 [1] [emphasis added]). The legislature's use of the term "succeed to" and its reference to all "other legal obligations" of its predecessors clearly reflects an intent to have the Trust take over *all* legal liability arising out of ownership of the Park's premises.

Subsequent events further support the conclusion that the legislature intended the Trust to succeed to all the State's legal obligations arising out of its ownership of park property. By 2013 the Trust found that it was spending over $500,000 annually to insure against claims arising out of the park property (*see* Mem of Vice-President & Gen Counsel of Hudson River Park Trust, Bill Jacket, L 2013, ch 517 at 70). To shift that cost, in 2013 the legislature amended the Hudson River Park Act in order to require the State and City to indemnify the Trust for "bodily injury . . . claims alleged to occur on or relate to their respective real property in the park" (*see* L 2013, ch 517, § 5). This amendment, enacted after plaintiff's accident, illustrates that under the original Act, as it existed at the time of the accident, it was intended that the State and City would bear no further legal responsibility for injuries occurring within their portions of the park, and that the Trust would be the sole entity bearing full legal responsibility for any bodily injury sustained in the Park. It would not have been necessary for the legislature to enact the 2013 amendment if the 1998 Act allowed for continued liability on the part of the City and State for injuries occurring within their portions of the Park.

For all the foregoing reasons, we agree with the motion court that the State, although it continued to hold the registered title to Pier 40, no longer stood in the position of an "owner" for purposes of the Labor Law at the time of the accident, so that it was not a proper party in interest in this action, and the court was without jurisdiction over the claim (*see* Court of Claims Act § 9 [2]). Accordingly, we do not address whether, on the merits, claimant was entitled to leave to file a late notice of claim.

We recognize that as a result of this unusual legislative shifting of legal obligations without changing formal title, a Labor Law plaintiff is left in the unusual position of being unable to rely on the recorded title to determine the proper party to sue as the property's owner. This unusual circumstance may, in appropriate circumstances, constitute grounds for a motion to file a late notice of claim against the proper party. However, it does not justify an imposition of liability on the State here.

Accordingly, the order of the Court of Claims of the State of New York (O. Peter Sherwood, J.), entered July 18, 2014, which denied claimant's motion for leave to file a late notice of claim, should be affirmed, without costs.

TOM, J.P., ANDRIAS and KAPNICK, JJ., concur.

Order of the Court of Claims of the State of New York, entered July 18, 2014, which denied claimant's motion for leave to file a late notice of claim, affirmed, without costs.