■ Ruthie Williamson, Respondent, v 16 West 57th Street Co. et al., Appellants, et al., Defendant. (And a Third-Party

Action.) [683 NYS2d 548] —In an action to recover damages for personal injuries, the defendants 16 West 57th Street Co. and Mother Works, Inc., separately appeal from so much of an order of the Supreme Court, Kings County (Rappaport, J.), dated June 24, 1997, as (1) granted that branch of the plaintiff's motion which was for partial summary judgment on the issue of liability under Labor Law § 240, and (2) failed to search the record and grant the appellants summary judgment dismissing the causes of action under Labor Law §§ 200, 202, and 240 insofar as asserted against them.

Ordered that the order is modified, on the law, by adding thereto a provision that, upon searching the record, summary judgment is granted to the appellants dismissing the plaintiff's cause of action under Labor Law § 202; as so modified, the order is affirmed insofar as appealed from, with one bill of costs to the plaintiff, and the cause of action under Labor Law § 202 is dismissed insofar as asserted against the appellants.

Bernard Williamson was employed by the third-party defendant Audobon Window Cleaning, Inc. (hereinafter Audobon). The defendant Mother Works, Inc. (hereinafter Mother Works), is a retail maternity clothing store located in rented premises on West 57th Street in Manhattan. The defendant 16 West 57th Street Co. (hereinafter 16 West) is the owner of the building.

On or about September 25, 1995, Williamson appeared at the Mother Works store to clean its exterior windows pursuant to a maintenance agreement between Audobon and Mother Works. Williamson apparently gained access to the third-floor windows by climbing out a window onto a ledge. He affixed his canvas safety harness to anchors outside the windows. However, the canvas harness apparently broke, causing him to fall to the ground. He sustained grave physical injuries and reportedly remains in a comatose state.

Williamson, by his mother, his legally-appointed guardian (hereinafter the plaintiff), commenced the instant action against the appellants, alleging violations of Labor Law §§ 200, 202, and 240. In opposition to the plaintiff's motion for partial summary judgment on the issue of liability under Labor Law § 240, the appellants argued that Labor Law § 240 was inapplicable to claims by injured window cleaners and that Labor Law § 240 had been preempted by the provisions of Labor Law § 202 which pertained expressly to claims by window cleaners. The Supreme Court rejected the appellants' contentions and awarded the plaintiff partial summary judgment on the issue of liability on the Labor Law § 240 cause of action. We affirm.

Contrary to the appellants' contentions, Labor Law § 240 is applicable to claims by window cleaners who are injured as a result of elevation-related risks inherent in their work, as long as the cleaning of windows is not a truly domestic activity (*see, Koenig v Patrick Constr. Corp.,* 298 NY 313; *Rivers v Sauter,* 26 NY2d 260; *Cruz v Bridge Harbor Hgts. Assocs.,* 249 AD2d 44; *Buendia v New York Natl. Bank,* 223 AD2d 456; *D'Amico v Manufacturers Hanover Trust Co.,* 177 AD2d 441; *Ferrari v Niasher Realty,* 175 AD2d 591; *Terry v Young Men's Hebrew Assn.,* 168 AD2d 399, *affd* 78 NY2d 978; *Ramos v Marksue Realty Corp.,* 586 F Supp 488; *Osorno v AD 1619 Co.,* NYLJ, Nov. 6, 1995, at 29, col 6; *see also, Retamal v Miriam Osborne Mem. Home Assn.,* 256 AD2d 506 [decided herewith]; *cf., Aviles v Crystal Mgt.,* 233 AD2d 129). Labor Law § 240 (1) is expressly applicable, *inter alia,* to the cleaning of a building. Giving the statute a liberal construction to effectuate the Legislature's intent of protecting workers by imposing absolute liability for their safety upon, among others, building owners and lessees who contract for window-washing services (*see, Buckley v Radovich,* 211 AD2d 652; *Demartino v CBS Auto Body & Towing,* 208 AD2d 886), Labor Law § 240 provides for liability notwithstanding that the cleaning of windows was not related to the construction or renovation of a building. In *Connors v Boorstein* (4 NY2d 172) the Court of Appeals held that Labor Law § 240 was inapplicable to claims by a domestic who fell from a step ladder while cleaning the exterior windows of her employer's residence, in part because the cleaning was not related to the construction, demolition, or repair of a building. However, in *Rivers v Sauter* (26 NY2d 260, 263, *supra*) the Court explained "the limitation in the statute expressed in *Connors* should apply only [in] truly domestic situations". Thus, while window cleaning in a domestic situation is beyond the scope of Labor Law § 240 (*see, Brown v Christopher St. Owners Corp.,* 87 NY2d 938, *affg* 211 AD2d 441; *Aviles v Crystal Mgt., supra*), where a professional window cleaner is injured as a result of elevation-related risks while cleaning the exterior windows of a multiple-story commercial edifice, liability under Labor Law § 240 attaches (*see, Koenig v Patrick Constr. Corp., supra*; *Rivers v Sauter, supra*; *Retamal v Miriam Osborne Mem. Home Assn., supra*; *Cruz v Bridge Harbor Hgts. Assocs., supra*; *Roldan v Molyneux,* 227 AD2d 240; *Buendia v New York Natl. Bank, supra*; *Ferrari v Niasher Realty, supra*; *Terry v Young Men's Hebrew Assn., supra*; *Ramos v Marksue Realty Corp., supra*; *Osorno v AD 1619 Co., supra*).

Moreover, we reject the appellants' contention that the plaintiff is precluded from recovery under Labor Law § 240

because it is preempted by Labor Law § 202. It has been repeatedly held that "[t]he fact that plaintiff also sought recovery under section 202 of the Labor Law, specifically pertaining to 'window cleaning' does not preclude plaintiff from relying on section 240" (*Terry v Young Men's Hebrew Assn., supra,* at 400; *see also, Retamal v Miriam Osborne Mem. Home Assn., supra; Cruz v Bridge Harbor Hgts. Assocs., supra; Ferrari v Niasher Realty, supra; Ramos v Marksue Realty Corp., supra*).

Our dissenting colleague correctly states the principle of statutory construction which dictates that where a general statute and a specific statute pertaining to the same subject appear to be in conflict, the specific statute should govern over the general. However, that rule would be improperly applied in cases such as this, where its effect would be to subvert the principal purpose of *both* the general and specific statute. The origins of Labor Law § 240 date back to 1885 (L 1885, ch 314). Labor Law § 202 was enacted in 1930 (L 1930, ch 605). To date, no court has held that the provisions of Labor Law § 202 preempt those of Labor Law § 240 and the Appellate Divisions, First and Fourth Departments, have expressly held to the contrary (*see, Cruz v Bridge Harbor Hgts. Assocs., supra; Terry v Young Men's Hebrew Assn., supra; Ferrari v Niasher Realty, supra; see also, Ramos v Marksue Realty Corp., supra; Osorno v AD 1619 Co., supra*).

The central purpose of both Labor Law § 202 and Labor Law § 240 is to protect workers engaged in high-risk, height-related occupations. Labor Law § 240, entitled "Scaffolding and other devices for use of employees", was enacted to protect workers involved in the erection, demolition, repairing, altering, painting, cleaning, and pointing of a building. Contractors and owners are required by the statute to furnish scaffolding, hoists, stays, ladders, slings, hangers, blocks, pulleys, braces, irons, ropes, and other devices so as to provide proper protection to the employees (*see, Felker v Corning, Inc.,* 90 NY2d 219; *Gordon v Eastern Ry. Supply,* 82 NY2d 555). Window cleaners have been included among the workers covered by this statute as persons cleaning buildings (*see, Koenig v Patrick Constr. Corp., supra; Terry v Young Men's Hebrew Assn., supra; Ferrari v Niasher Realty, supra; Ramos v Marksue Realty Corp., supra; Osorno v AD 1619 Co., supra*).

Labor Law § 240 imposes absolute liability upon those parties charged with responsibility under the statute (*see, e.g., Gordon v Eastern Ry. Supply, supra*). Thus, Labor Law § 240 affords exceptional relief and protection to those workers covered by the statute (*see, Ross v Curtis-Palmer Hydro-Elec.*

*Co.,* 81 NY2d 494; *Rocovich v Consolidated Edison Co.,* 78 NY2d 509).

Labor Law § 202, entitled "Protection of the public and of persons engaged at window cleaning and cleaning of exterior surfaces of buildings", imposes a duty on owners, lessees, agents, managers, or superintendents of certain public buildings and contractors involved with the cleaning of windows and exterior surfaces of such buildings to provide certain physical devices for the protection of window cleaners (*see, Berrios v 1115 Fifth Ave. Corp.,* 160 AD2d 655). The bill jackets accompanying the enactment of, and amendments to, Labor Law § 202 demonstrate that this legislation was vigorously sponsored by the New York State Federation of Labor and was opposed with equal vigor by various real estate interests. Labor Law § 202 was enacted to furnish additional safety regulations which labor believed to be essential to the protection of those workers involved in an occupation that is "one of the most hazardous at which human beings are employed. The interest of the New York State Federation of Labor in this matter is solely one of protecting the life and physical well being of workers employed in extremely hazardous occupations" (Mem of NY State Fedn of Labor to Governor Herbert H. Lehman, dated Apr. 24, 1942, in support of L 1942, ch 824, to amend Labor Law § 202 to, *inter alia,* extend protection to workers cleaning interior windows as well as exterior windows). Significantly, in none of the legislative materials accompanying the enactments of, and amendments to, Labor Law §§ 202 and 240, is there *any* indication that section 202 was intended to provide the exclusive remedy to injured window cleaners or that Labor Law § 240 was intended not to provide protection for window cleaners from the inherent elevation-related risks of their trade.

Were we to agree with our dissenting colleague that Labor Law § 202 was intended to preempt Labor Law § 240 in connection with window cleaners, we would be eviscerating a substantial protection afforded such workers by Labor Law § 240 absent any express or reasonably-inferred intention on the part of the Legislature. Such an interpretation would indeed be contrary to the purposes of Labor Law §§ 202 and 240.

Moreover, it is significant that as presently drafted, Labor Law § 202 is not applicable to all buildings (*see, Retamal v Miriam Osborne Mem. Home Assn., supra*). It expressly exempts multiple dwellings six stories or less in height or any building of three stories or less in cities, towns, and villages

having a population of less than 40,000. If Labor Law § 202 were held to preempt Labor Law § 240, according to the rationale of the dissent, window cleaners working in buildings exempted from the provisions of Labor Law § 202 would be provided neither the protection of Labor Law § 202 nor § 240. Indeed, these workers would be afforded no protection at all. Thus, the very statute the dissent concludes provides window cleaners with their exclusive remedy would provide no remedy at all to window cleaners of buildings exempted from the provisions of Labor Law § 202. No policy or other rationale appears to justify or warrant this interpretation, which would create inconsistent and irrational results that were clearly not intended by the legislature.

Accordingly, given the absence of any indication that the Legislature intended for Labor Law § 202 to provide the exclusive remedy for window cleaners injured as a result of the elevation-related risks of their work, and consistent with the legislative purpose underlying both Labor Law §§ 202 and 240, we conclude that the Supreme Court properly rejected the appellants' contentions that Labor Law § 202 precludes the plaintiff from asserting a cause of action pursuant to Labor Law § 240, and correctly awarded the plaintiff partial summary judgment on the issue of liability on the Labor Law § 240 cause of action.

However, insofar as the plaintiff has not demonstrated that the appellants violated the provisions of Labor Law § 202, we find that the appellants are entitled to summary judgment dismissing this cause of action (*see, Rich v County of Dutchess,* 20 AD2d 504, *affd* 16 NY2d 683). However, we may not search the record in connection with the Labor Law § 200 cause of action (*see, Dunham v Hilco Constr. Co.,* 89 NY2d 425). Miller, J. P., Goldstein and Florio, JJ., concur.

Pizzuto, J., concurs in part and dissents in part and votes to reverse the order insofar as appealed from, deny the plaintiff's motion for partial summary judgment, and, upon searching the record, grant summary judgment to the appellants dismissing the plaintiff's causes of action under Labor Law §§ 240 and 202, in the following memorandum: For the following reasons, I would reverse the order appealed from and, upon searching the record, I would grant summary judgment to the appellants, dismissing the causes of action predicated on Labor Law §§ 202 and 240.

Labor Law § 202 provides, in pertinent part, that: "The owner, lessee, agent, manager or superintendent of any such public building and every contractor involved shall not require,

permit, suffer or allow any window or exterior surface of such building to be cleaned unless such means are provided to enable such work to be done in a safe manner * * * A person engaged at cleaning windows or exterior surfaces of a public building shall use the safety devices provided for his protection. Every employer and contractor involved shall * * * require his employee, while engaged in cleaning any window or exterior surface of a public building, to use the equipment and safety devices required by this chapter and rules of the board of standards and appeals."

As the Court of Appeals stated in *Connors v Boorstein* (4 NY2d 172), albeit in dicta: "The Legislature dealt with window cleaning as a separate matter by enacting section 202 of the Labor Law for the express purpose of providing for the 'Protection of persons engaged at window cleaning'" (*Connors v Boorstein, supra,* at 175, citing *Pollard v Trivia Bldg. Corp.,* 291 NY 19). Since then, on two occasions, the Court of Appeals has declined to consider whether Labor Law § 202 preempts Labor Law § 240 (*see, Terry v Young Men's Hebrew Assn.,* 78 NY2d 978; *Brown v Christopher St. Owners Corp.,* 87 NY2d 938).

In my view, it does. The more specific duties and obligations imposed by Labor Law § 202 upon the owner, lessee, agent, and manager of certain public buildings and every contractor involved to provide safe means for the cleaning of windows as may be required and approved by the Industrial Board of Appeals statutorily imposes and fixes the duties and obligations of these individuals, and we should not expand the duties imposed under Labor Law § 240 into the realm expressly governed and reserved by Labor Law § 202.

"If there are two provisions in the same act, of which one is special and particular, and clearly indicates the matter in controversy, whilst the other is general and would, if standing alone, include it also, and if reading the general provision side by side with the particular one, the inclusion of that matter in the former would produce a conflict between it and the special provision, it must be taken that the latter was designed as an exception to the general provision" (*People ex rel. Knoblauch v Warden,* 216 NY 154, 157). Stated another way, statutory construction requires that where a general statute is in apparent conflict with a specific statute dealing with the same subject matter, the specific statute creates an exception to the general (*see,* McKinney's Cons Laws of NY, Book 1, Statutes § 396; *East End Trust Co. v Otten,* 255 NY 283; *Board of Coop. Educ. Servs. v Goldin,* 38 AD2d 267; *St. Germain v St. Germain,* 25 AD2d 568). Labor Law § 202 deals specifically with the circum-

stances of window cleaning while Labor Law § 240 covers the more general circumstances of risks due to elevation.

Here, a conflict exists between Labor Law §§ 202 and 240 in that Labor Law § 202 and the regulations implementing it, specifically dealing with window cleaning as opposed to the more general provisions of Labor Law § 240, place upon the owner the duty to install window anchors "or other fixed devices" (12 NYCRR 21.3 [b] [1]) and places upon the employer the duty to provide "the portable equipment", e.g., safety belts (12 NYCRR 21.3 [b] [2]). The employer is also expressly charged under Labor Law § 202 with the inspection of "[s]afety belts * * * at least once each month * * * and he shall not suffer or permit the use of such equipment while it is unsafe in any respect" (12 NYCRR 21.3 [g]). Thus, while the facts of this case fall squarely within the specific provisions of Labor Law § 202 dealing with window cleaning, the more general provisions of Labor Law § 240 are now being expanded to hold the owner/lessee liable for the violation of a duty expressly placed upon the employer under Labor Law § 202. In short, by applying Labor Law § 240 the owner/lessee is now responsible for the inspection of the safety belt used by window cleaners, and the provisions and regulations of Labor Law § 202 are rendered meaningless.

The majority asserts that the application of the above rule of statutory construction here would "subvert the principal purpose of *both* the general and specific statute" (*supra*, at 510). I respectfully disagree. In the case of window cleaners injured while working on buildings more than six stories high, the worker is provided the protection of Labor Law § 202. In cases of other injuries occurring in a more general construction context, Labor Law § 240 would apply. Nothing is subverted. That liability in this case would be imposed on the employer and not the owner/lessee is simply a product of the plain reading of the regulations implemented under Labor Law § 202, which places the responsibility for supplying and inspecting the safety belt squarely on the employer, as this Court has previously expressly held (*see, Rich v County of Dutchess,* 20 AD2d 504, *affd* 16 NY2d 683). Thus, while there is no subversion of either Labor Law § 202 or § 240 by applying proper statutory construction, there is a clear conflict by allowing Labor Law § 240 to be applied to cases of window cleaning covered by Labor Law § 202. To the extent that the majority dislikes the results and would prefer to hold both the employer and owner/lessee liable in such cases of window cleaning injuries, I would suggest that the remedy lies with the Legislature, not the courts.

That Labor Law § 202 exempts buildings of six stories or less also does not eviscerate the protections afforded to workers. Where the building is six stories or less, Labor Law § 202 would not apply, and so, no conflict would exist in applying Labor Law § 240 (*see, e.g., Retamal v Miriam Osborne Mem. Home Assn.*, 256 AD2d 506 [decided herewith]; *Ramos v Marksue Realty Corp.*, 586 F Supp 488). The majority's statement, that if Labor Law § 202 is held to preempt Labor Law § 240, a window cleaner working on a building exempted from the provisions of Labor Law § 202 "would be provided neither the protection of Labor Law § 202 nor § 240", and so, "would be afforded no protection at all", is incorrect (*supra,* at 512). As stated, where the building is exempted from the provisions of Labor Law § 202, Labor Law § 240 may be applied. Further, even if a worker did not come under the strict liability protections of Labor Law §§ 202 or 240, this would simply mean that the worker was relegated to bringing an action based on ordinary negligence, or, at the very least, afforded the protection of the Workers' Compensation Law. There is nothing "inconsistent and irrational" about this, as the majority contends. Nor is it "inconsistent and irrational" that a window cleaner of a building of six stories or less might in fact receive the protections of Labor Law § 240 (*see, Retamal v Miriam Osborne Mem. Home Assn., supra*; *Ramos v Marksue Realty Corp., supra*) but not of Labor Law § 202. The motivation of the majority to expand the protections afforded to injured workers may indeed be a noble one. It is, however, in my view, inconsistent and irrational to render meaningless all of the very specific provisions of Labor Law § 202 and the regulations implementing it by ignoring the specific provisions regarding the division of responsibilities between the owner/lessee and employer, and instead applying Labor Law § 240 so as to render the owner responsible for the very duties expressly placed on the employer by Labor Law § 202 and the regulations promulgated thereunder.

As the majority is aware, Labor Law § 240 (1) unequivocally excludes owners of one and two family dwellings from strict liability to workers injured while working on such dwellings when the owners do not direct or control the work. Surely the majority would not argue that such workers are left with "no protection at all", or that Labor Law § 240 must apply to such workers simply because Labor Law § 202 does not and they would otherwise be left with "no protection at all". Nor would the majority contend that the failure of the Legislature to cover workers of one and two family dwellings under Labor Law § 240 was "inconsistent and irrational". It is difficult, therefore, to understand why it follows here that Labor Law § 240 must

apply to all window cleaning situations. If proper statutory construction leads to the conclusion that the Legislature intended that a worker injured while cleaning windows in a building of six stories or more should be afforded only the protections of Labor Law § 202, then that is the law which the courts must enforce.

The majority also makes much of the fact that nowhere in the legislative materials accompanying the enactments of, and amendments to, Labor Law §§ 202 and 240 "is there *any* indication that section 202 was intended to provide the exclusive remedy to injured window cleaners". (*Supra,* at 511.) However, this statement ignores the fact that Labor Law § 202 expressly states: "Notwithstanding any other law or regulation, local or general, the provisions of this section and the rules issued thereunder shall be applicable *exclusively* throughout the state" (emphasis added). This language evidences an intent on the part of the Legislature that Labor Law § 202 should be exclusive with regard to its subject matter, i.e., "window cleaning and cleaning of exterior surfaces of buildings", and should preempt the more general provisions of other statutes, such as Labor Law § 240. It is also noteworthy that Labor Law § 240 is contained in article 10 of the Labor Law, dealing with "Building construction, demolition, and repair work", while Labor Law § 202, dealing specifically with window cleaning, is contained separately in article 7. Thus, it is evident that the Legislature meant to deal with window cleaning as a separate and distinct subject from that which is dealt with in Labor Law article 10.

The exclusive and preemptory nature of Labor Law § 202 is further evidenced by the all-inclusive nature of the regulations promulgated under this section. For example, 12 NYCRR 21.4 authorizes five means and methods for window cleaning: (a) working from safe surfaces; (b) working from window sills or ledges; (c) working from ladders; (d) working from boatswain's chairs; and (e) working from scaffolds. 12 NYCRR 21.5 through 21.9 lay out, in exhaustive detail, how each of the above means and methods must be carried out and the safety equipment necessary. For example, 12 NYCRR 21.6, dealing with working from window sills or ledges, provides, in part:

"(a) Use of method.

"(1) A cleaner shall not be suffered or permitted to clean a window from the outside by this method except a window which is so constructed, equipped and maintained as to be safe for cleaning by anchors and safety belts (herein called a safe window) and certain other windows below described.

"(2) A safe window is one which complies with all of the following requirements:

"(i) It shall not be horizontally pivoted.

"(ii) If it is vertically pivoted or hinged it shall afford an unobstructed passage space to the exterior sill at least 16 inches wide and 40 inches high, and it shall be so constructed that when it is open it does not interfere with the attachment of the safety belt terminals to the anchors.

"(iii) If it is double-hung or counterbalanced it shall afford an unobstructed passage space to the exterior sill not less than 21 inches wide and 30 inches high from the sill.

"(iv) It shall afford a safe way of approach from an interior floor level to the passage space.

"(v) It shall have an unobstructed sill or ledge providing a footing at least four inches wide for the full width of the window frame.

"(vi) It shall have its movable parts readily operable and in good condition.

"(vii) It shall be structurally adapted to an authorized installation of anchors" (12 NYCRR 21.6).

12 NYCRR 21.6 (b) describes other "special windows". The remaining subdivisions of 12 NYCRR 21.6 exhaustively describe, among other things, the necessity for safety belts and anchors and how they are to be used. 12 NYCRR 21.10 dictates the minutiae of acceptable methods for the installation of anchors, and 12 NYCRR 21.11 mandates in great detail the specifications for safety belts. 12 NYCRR 21.12 describes the tests necessary for safety belts, and 12 NYCRR 21.13 dictates the exact specifications for anchors and anchor fastenings.

In short, the regulations set forth in minute detail which party is responsible for supplying, installing, or inspecting which safety devices and the exact specifications for the equipment and its installation. Such exhaustively-detailed regulations regarding window cleaning, and the statute's language that it shall be "applicable exclusively throughout the state", strongly suggests a legislative intent that Labor Law § 202 preempt the field of regulation with regard to window cleaning. However, the application of the general provisions of Labor Law § 240 to the present case would render these exhaustive regulations meaningless, particularly the provisions of 12 NYCRR 21.3.

Thus, the plaintiff's cause of action against the appellants predicated on Labor Law § 240 should be dismissed.

Turning to the plaintiff's claim under Labor Law § 202, the

plaintiff sought partial summary judgment on her Labor Law § 202 cause of action as an alternative to partial summary judgment under Labor Law § 240. The issue of entitlement to summary judgment under Labor Law § 202 was, therefore, squarely before the Supreme Court. Thus, this Court may search the record and grant summary judgment to the appellants on this cause of action (*see,* CPLR 3212 [b]; *cf., Dunham v Hilco Constr. Co.,* 89 NY2d 425), the appellants' entitlement to summary judgment on this cause of action is clearly mandated under the authority of *Rich v County of Dutchess (supra).*

The plaintiff's Labor Law § 202 cause of action should also be dismissed because, as owner or lessee of the premises, the appellants were not responsible for providing the safety belt, but satisfied their responsibility by, among other things, providing the anchors fixed to the building, to which the window cleaner attached his belt (*see,* 12 NYCRR 21.3 [b]; *Rich v County of Dutchess, supra*).

In *Rich v County of Dutchess (supra),* the plaintiff's decedent, a window cleaner employed by an independent contractor, fell from a fourth-floor window of the defendant's building when the safety belt he wore broke. We held that "[a]n owner who properly installs and maintains anchors or other safety devices for cleaning windows, fulfills his statutory obligation" (*Rich v County of Dutchess, supra,* at 506), and we further held that an owner is under no duty to examine the equipment of an independent contractor, and therefore may not be held responsible for defects in the independent contractor's equipment of which defects the owner has no actual notice. We noted that the then-existing regulations provided for the window cleaner's employer to examine the safety belt at least once each month and that the employer should not suffer or permit the use of such equipment while it is unsafe in any respect (*Rich v County of Dutchess, supra,* at 506). These are precisely the facts and applicable regulations here.

There is no dispute that the owner provided anchors and that the subcontractor provided the safety harness. Williamson affixed his safety harness to the anchors outside the windows, and the canvas harness apparently broke, causing him to fall to the ground. The owner has fully complied with the requirements of Labor Law § 202 and the rules and regulations promulgated thereunder, and should not be liable.

However, we may not search the record and grant summary judgment to the appellants dismissing the plaintiff's cause of action under Labor Law § 200 (*see, Dunham v Hilco Constr. Co., supra*).